**[J-18-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| BRIAN GALLAGHER, | : | No. 35 WAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered January 27, |
| | : | 2017 at No. 352 WDA 2016, |
| v. | : | affirming the Order of the Court of |
| | : | Common Pleas of Westmoreland |
| | : | County entered February 18, 2016 at |
| GEICO INDEMNITY COMPANY, | : | No. 5561 of 2014. |
| | : | |
| Appellee | : | ARGUED: April 10, 2018 |

## OPINION

**JUSTICE BAER**                                    **DECIDED: JANUARY 23, 2019**

This appeal requires the Court to determine whether a "household vehicle exclusion" contained in a motor vehicle insurance policy violates Section 1738 of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1738, because the exclusion impermissibly acts as a *de facto* waiver of stacked uninsured and underinsured motorist ("UM" and "UIM," respectively) coverages.[1] We hold that the household vehicle exclusion violates the MVFRL. Accordingly, we vacate the Superior Court's judgment, reverse the trial court's order granting summary judgment in favor of Appellee GEICO Indemnity Company ("GEICO"), and remand to the trial court for further proceedings.

---

[1] UM coverage applies when an insured suffers injury or damage caused by a third-party tortfeasor who is uninsured, whereas UIM coverage is triggered when a third-party tortfeaser injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full. "Stacking" refers to the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to an insured.

The facts underlying this appeal are undisputed. On the morning of August 22, 2012, Appellant Brian Gallagher ("Gallagher") was operating his motorcycle when William Stouffer ("Stouffer") failed to stop his pickup truck at a stop sign. Stouffer's truck collided with Gallagher's motorcycle, causing Gallagher to suffer severe injuries.

At the time of the accident, Gallagher had two insurance policies; notably, he purchased both of the policies from GEICO. One policy, which included $50,000 of UIM coverage, insured only Gallagher's motorcycle ("Motorcycle Policy"). The second policy insured Gallagher's two automobiles and provided for $100,000 of UIM coverage for each vehicle ("Automobile Policy"). Gallagher opted and paid for stacked UM and UIM coverage when purchasing both policies.[2]

Stouffer was insured by Progressive Insurance Company ("Progressive"), and Gallagher eventually settled his claim against Stouffer and Progressive. However, Stouffer's insurance coverage was insufficient to compensate Gallagher in full. Consequently, Gallagher filed claims with GEICO seeking stacked UIM benefits under both of his GEICO policies.

While GEICO paid Gallagher the $50,000 policy limits of UIM coverage available under the Motorcycle Policy, it denied his claim for stacked UIM benefits under the Automobile Policy. GEICO based its decision on a household vehicle exclusion found in an amendment to the Automobile Policy. The exclusion states as follows: "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy." GEICO's Motion for Summary

---

[2] The Motorcycle Policy provided $50,000 of UIM coverage, and pursuant to the Automobile Policy, each automobile had $100,000 of UIM coverage per person with a cap of $300,000 per occurrence. Thus, when stacked, Gallagher's policy limits under these facts would be $250,000.

Judgment, 4/2/2015, Exhibit D, at Automobile Policy Amendment (UIM Coverage/Pennsylvania/Stacked). Because Gallagher suffered bodily injury while occupying his motorcycle, which was not insured under the Automobile Policy, GEICO took the position that the household vehicle exclusion precluded Gallagher from receiving stacked UIM coverage pursuant to that policy.

In November of 2014, Gallagher filed a complaint naming GEICO as the defendant. Gallagher claimed that, because he purchased stacked UIM coverage as part of the Automobile Policy, GEICO is required to provide that coverage. GEICO responded by filing an answer with new matter, wherein it contended that stacked UIM coverage was unavailable to Gallagher due to the Automobile Policy's household vehicle exclusion.

In reply, Gallagher pointed out that GEICO placed his motorcycle and automobiles on separate policies and, thus, had full knowledge of all of his vehicles. He further stated that, because he opted and paid for stacked UM/UIM coverage, GEICO charged him a higher premium on both policies. According to Gallagher, by denying him stacked UIM coverage based upon the household vehicle exclusion, GEICO was depriving him of the stacked UIM coverage for which he paid. Gallagher highlighted that GEICO was well aware that he had not waived stacked coverage on either of his policies and that he had paid increased premiums for that coverage; yet, GEICO refused to honor his claim for stacked UIM coverage, rendering that coverage illusory.

In April of 2015, GEICO filed a motion for summary judgment and a brief in support of that motion wherein GEICO renewed its argument that the Automobile Policy's household vehicle exclusion precluded Gallagher from receiving stacked UIM coverage under that policy. In support of its argument, GEICO observed that "[t]he

appellate courts have previously enforced the identical household vehicle exclusion in *Government Employees Ins. Co. v. Ayers*, 955 A.2d 1025 (Pa. Super. 2008), *aff'd* 18 A.3d 1093 (Pa. 2011)."[3]  Motion for Summary Judgment, 4/2/2015, at ¶10.

Gallagher filed a response to the motion for summary judgment and a brief in support thereof.  Gallagher acknowledged that, in *Ayers*, the Superior Court ruled that a household vehicle exclusion contained in a motor vehicle insurance policy did not violate Section 1738 of the MVFRL, which states, *inter alia*, that stacked UM and UIM coverages are the default coverages for all insureds and that an insurer must provide an insured with a statutorily prescribed waiver form, which the named insured must sign if he decides to decline UM and UIM coverages.[4]  Gallagher, however, pointed

---

[3] In *Ayers*, the Superior Court concluded that a household vehicle exclusion did not violate Section 1738 of the MVFRL.  *Ayers*, 955 A.2d 1025.  This Court granted allowance of appeal; however, we ultimately affirmed the Superior Court's judgment in a *per curiam* order because the Court was evenly split as to the result.  *Gov't Employees Ins. Co. v. Ayers*, 18 A.3d 1093 (Pa. 2011); *see Creamer v. Twelve Common Pleas Judges*, 281 A.2d 57, 58 (Pa. 1971) (explaining that "when an appellate court is equally divided, the judgment, order or decree of the court below will be affirmed").  Thus, this Court's decision in *Ayers* does not raise concerns regarding *stare decisis* because it does not constitute binding precedent.

[4] Section 1738 of the MVFRL provides, in pertinent part, as follows:

> **(a) Limit for each vehicle.--**When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

> **(b) Waiver.--**Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

> **(c) More than one vehicle.--**Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a

policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

**(d) Forms.--**

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

### UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

* * *

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

### UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

* * *

**(e) Signature and date.--**The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S. § 1738.

out that this Court evenly split on the issue. Gallagher essentially maintained that the Superior Court wrongly decided *Ayers* and that GEICO should be required to provide him with stacked UIM coverage under his Automobile Policy because: (1) he purchased stacked coverage; (2) he never signed a stacking-waiver form; and (3) GEICO impermissibly included a household vehicle exclusion in the policy to act as a waiver of UIM coverage.

On February 18, 2016, the trial court issued an order granting GEICO's motion for summary judgment, citing to the Superior Court's decision in *Ayers*. Gallagher timely filed a notice of appeal and subsequently argued to the Superior Court that the trial court erred by granting GEICO's motion for summary judgment. A three-judge panel of the Superior Court affirmed the trial court's order in a non-precedential memorandum. *Gallagher v. GEICO Indem. Co.*, 352 WDA 2016 (Pa. Super. filed January 27, 2017). In so doing, the Superior Court concluded that it was bound by its opinion in *Ayers* and by *Erie Insurance Exchange v. Baker*, 972 A.2d 507 (Pa. 2009) (plurality), wherein a plurality of this Court concluded that a household vehicle exclusion was valid and enforceable to preclude UIM coverage.[5]

---

[5] Like *Ayers*, *supra*, this Court's decision in *Baker* does not raise concerns regarding *stare decisis* because, as a plurality opinion, it does not constitute binding precedent. *See Pitt Ohio Express v. W.C.A.B. (Wolff)*, 912 A.2d 206, 208 (Pa. 2006) ("Reliance on [*General Electric Company v. W.C.A.B. (Myers)*, 849 A.2d 1166 (Pa. 2004) (plurality),] is problematic, as it was a plurality decision and is not binding precedent."). To be clear, the issue before the Court in *Baker* was whether a household vehicle exclusion violated Subsection 1738 of MVFRL, rendering the exclusion invalid and unenforceable. *See Baker*, 972 A.2d at 509 (explaining that this Court granted allowance of appeal to consider "[w]hether Section 1738(a) of the [MVFRL] precludes application of the so-called 'household exclusion' to prevent inter-policy stacking of UIM benefits when there has been no valid stacking waiver by the insured[]"). Three Justices authored opinions addressing this issue, and each opinion offered different rationales. No single opinion garnered sufficient votes to constitute a binding, majority opinion. Thus, contrary to the Dissent's assertions, we are not disregarding any precedential impact of *Baker* because no position became law of the case. Dissenting Opinion at 4 n.3.

Notably, however, the three-judge panel of the Superior Court was comprised of Judges Dubow, Moulton, and Musmanno. While Judge Moulton authored the court's lead memorandum, Judge Musmanno, who dissented in *Ayers*, filed a Concurring Statement. In that statement, Judge Musmanno reluctantly concurred with the result, pointing out that, in his dissent in *Ayers*, he stated, *inter alia*, that it was his "judgment that the application of the household [vehicle] exclusion where an insured had not waived and received an attendant reduction in premiums acts as an unknowing waiver of stacking coverage that deprives an insured of the benefits for which he or she paid." *Gallagher v. GEICO Indem. Co.*, 352 WDA 2016 (Pa. Super. filed January 27, 2017) (Musmanno, J., concurring statement) (quoting *Ayers*, 955 A.2d at 1030 (Musmanno, J. dissenting)). Judge Musmanno continued to adhere to this position and urged this Court to review the matter. Judges Dubow and Moulton joined Judge Musmanno's Concurring Statement.

Gallagher then filed a petition for allowance of appeal, which this Court granted to address the following issues, as stated by Gallagher:

(1) Whether the "household vehicle exclusion" violates Section 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) where GEICO issued all household policies and unilaterally decided to issue two separate policies, when the insured desired stacking, elected stacking, paid additional premiums for stacking and never knowingly waived stacking of underinsured motorist benefits?

(2) Whether the "household vehicle exclusion" impermissibly narrows or conflicts with the statutory mandates of the Pennsylvania Motor Vehicle Financial Responsibility Law and the evidence of record is that GEICO was fully aware of the risks of insuring a motorcycle in the same household as other family vehicles but unilaterally decided to write a separate motorcycle policy?

*Gallagher v. GEICO Indem. Co.*, 170 A.3d 974 (Pa. 2017).

According to Gallagher, GEICO's household vehicle exclusion "impermissibly narrows and conflicts with the mandates of the MVFRL." Gallagher's Brief at 23.

Gallagher argues that the inclusion of the exclusion stripped him of the stacked coverage to which he was entitled under the MVFRL because he did not waive stacked UIM coverage. In this regard, Gallagher contends that he "paid for phantom stacked UIM coverage" because, in reality, the household vehicle exclusion ensures that the Automobile Policy's UIM coverage could never be stacked with the coverage available under the Motorcycle Policy. *Id.* at 14. He further maintains that the household vehicle exclusion is invalid because it prevents his receipt of stacked UIM coverage in the absence of a MVFRL-compliant stacking waiver. Gallagher essentially claims that the household vehicle exclusion acts as a disguised waiver of stacking, which does not otherwise comply with the MVFRL's statutory waiver requirements mandating stacking absent a detailed, plain-language waiver.

GEICO, on the other hand, believes that Gallagher's reliance on Section 1738's waiver-of-stacking rubric is misplaced. GEICO contends that Section 1738 governs stacking of UM/UIM coverage limits only in policies that provide such coverage in the first instance. According to GEICO, Gallagher's Automobile Policy does not include UIM coverage for his motorcycle, per the unambiguous limitation expressed in the household vehicle exclusion. In other words, GEICO takes the position that household vehicle exclusions permissibly limit the scope of UM/UIM coverage without running afoul of Section 1738, which governs an insured's choice to accept or reject stacked coverage.

We begin our analysis by summarizing the general principles of law that govern this matter. First, this appeal comes to the Court by way of an order granting summary judgment. "When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery."

*Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 566 (Pa. 2005) (citing *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005)). "A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law." *Id.* "In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.* at 566-67. "Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion." *Id.* at 567 (citation omitted). Whether the household vehicle exclusion violates the MVFRL presents the Court with a question of law. Accordingly, our standard of review is *de novo*, and our scope of review is plenary. *Id.*

To answer this question of law, we must examine the interplay between provisions of the MVFRL and the Automobile Policy. To the extent that such a task requires us to interpret the MVFRL, we are guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

To the extent that this appeal involves the interpretation of the Automobile Policy, we must apply general principles of contract interpretation, as, at base, an insurance policy is nothing more than a contract between an insurer and an insured. *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). In so doing, we must "ascertain the intent of the parties as manifested by the terms used in the written

insurance policy." *Id.* Just as in statutory construction, "[w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language." *Id.* Importantly, however, provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws. *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 751 (Pa. 2002).

Turning first to the MVFRL, Subsection 1738(a) unambiguously states that the limits of coverage for each vehicle owned by an insured "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa.C.S. § 1738(a). This provision specifically applies "[w]hen more than one vehicle is insured under one or more policies" providing for UM/UIM coverage. *Id.* In other words, stacked UM/UIM coverage is the default coverage available to every insured and provides stacked coverage on all vehicles and all policies.

Under the MVFRL, insureds can choose to waive stacked coverage. *Id.* at § 1738(b). If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the different cost of coverage. *Id.* at § 1738(c). Importantly, the MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. *Id.* at § 1738(d). This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.

Here, it is undisputed that: (1) Stouffer, the tortfeasor who caused the accident, was underinsured; (2) Gallagher did not sign the statutorily-prescribed UIM stacking waiver form for either of his GEICO policies; and (3) he would have received the UIM

coverage that he bought and paid for under both of his GEICO policies pursuant to Subsection 1738(a) of the MVFRL, save for the "household vehicle exclusion" found in an amendment to the Automobile Policy for which no explicit, formal acknowledgement was provided. As noted above, this exclusion provides as follows: "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy." GEICO's Motion for Summary Judgment, 4/2/2015, Exhibit D, at Automobile Policy Amendment (UIM Coverage/Pennsylvania/Stacked).

This policy provision, buried in an amendment, is inconsistent with the unambiguous requirements Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form. Instead, Gallagher decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision. He simply never chose to waive formally stacking as is plainly required by the MVFRL.

One of the insurance industries' age-old rubrics in this area of the law is that an insured should receive the coverage for which he has paid. Here, GEICO argues against this maxim by invoking the household vehicle exclusion to deprive Gallagher of the stacked UIM coverage that he purchased. This action violates the clear mandates of the waiver provisions of Section 1738. Indeed, contrary to Section 1738's explicit requirement that an insurer must receive an insured's written acknowledgement that he knowingly decided to waive UM/UIM coverage, the household vehicle exclusion strips an insured of default UM/UIM coverage without requiring an insurer to demonstrate, at a bare minimum, that the insured was even

aware that the exclusion was part of the insurance policy. This practice runs contrary to the MVFRL and renders the household vehicle exclusion invalid and unenforceable. *See Colbert*, *supra*. In fact, this case is a prime example of why household vehicle exclusions should not and cannot operate as a pretext to avoid stacking.

Often in these cases, an insurer contends that it should not have to provide stacked coverage when an insured purchases UM/UIM coverage on his motorcycle in Policy A, and then purchases UM/UIM coverage on passenger cars in Policy B. The obvious argument is that the insurer of the passenger cars is unaware of the potentiality of stacking between the car policy and the motorcycle policy. Here, however, GEICO was aware of this reality, as it sold both of the policies to Gallagher and collected premiums for stacked coverage from him. To the extent that GEICO's premium would be higher on an automobile policy because of stacking with a motorcycle policy, all GEICO has to do is quote and collect a higher premium. There simply is no reason that insurers cannot comply with the Legislature's explicit directive to offer stacked UM/UIM coverage on multiple insurance policies absent a knowing Section 1738 waiver and still be fairly compensated for coverages offered and purchased.[6]

For all of these reasons, we hold that the household vehicle exclusion violates the MVFRL; therefore, these exclusions are unenforceable as a matter of law.[7, 8]

---

[6] We recognize that this decision may disrupt the insurance industry's current practices; however, we are confident that the industry can and will employ its considerable resources to minimize the impact of our holding. For example, when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process.

[7] Additionally, the Legislature is free to alter the MVFRL to allow this type of exclusion; however, given the MVFRL's conspicuous silence regarding the household vehicle exclusion, we are bound to follow the plain language of Section 1738.

[8] As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL.

Accordingly, we vacate the Superior Court's judgment, reverse the trial court's order granting GEICO's motion for summary judgment, and remand the matter to the trial court for further proceedings consistent with this opinion.[9]

Justices Todd, Donohue, Dougherty and Mundy join the opinion.

Justice Wecht files a dissenting opinion.

Chief Justice Saylor notes his dissent.

---

Unlike the Dissent, we offer no opinion or comment on the enforceability of any other exclusion to UM or UIM coverage or to coverage in general, including exclusions relating to racing and other inherently dangerous activities. Dissenting Opinion 5-6. If, at some later date, the Court is presented with issues regarding the validity of other UM or UIM exclusions, then we will address them at that time. Our focus here is narrow, regardless of the Dissent's lament to the contrary.

[9] Gallagher did not file a motion for summary judgment. Therefore, at this procedural juncture, he is not entitled to entry of summary judgment in his favor. *See Bensalem Twp. Sch. Dist. v. Com.*, 544 A.2d 1318 (Pa. 1988) (explaining that only a moving party is entitled to entry of summary judgment).