**[J-49A-2019 and J-49B-2019] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| SAMANTHA SAYLES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : | No. 58 MAP 2018 |
| | : | |
| | : | Certification of Question of Law from |
| | : | the United States Court of Appeals for |
| Appellee | : | the Third Circuit at No. 17-3463. |
| | : | |
| | : | ARGUED: May 15, 2019 |
| v. | : | |
| | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | |
| | : | |
| Appellant | : | |
| | | |
| WILLIAM H. SCOTT, | : | No. 59 MAP 2018 |
| | : | |
| Appellee | : | Certification of Question of Law from |
| | : | the United States Court of Appeals for |
| | : | the Third Circuit at No. 17-3769. |
| v. | : | |
| | : | ARGUED: May 15, 2019 |
| | : | |
| TRAVELERS COMMERCIAL INSURANCE COMPANY, | : | |
| | : | |
| Appellant | : | |

## DISSENTING OPINION

**JUSTICE WECHT**                                   **DECIDED: November 20, 2019**

Section 1796 of the Motor Vehicle Financial Responsibility Law ("MVFRL") provides that, when the mental or physical condition of a claimant is at issue, "a court of competent jurisdiction . . . may order the person to submit to a mental or physical examination by a physician" upon a showing of good cause. 75 Pa.C.S. § 1796. Today's learned Majority fortifies and improves upon this statutory language, extending its reach

beyond lawsuits and into each and every insurance contract, regardless of whether any lawsuit was ever brought or even contemplated. Today's holding invokes Section 1796 to prohibit insurers from including in their policies contractual provisions requiring insureds to submit to a medical examination, and instead forces insurers first to obtain a court order upon a showing of good cause. This might strike many as a reasonable approach indeed. But it is not an approach that we may adopt and impose by judicial fiat. If the General Assembly wishes to amend the statute to codify the Majority's approach, it is free to do so. We are not empowered to rewrite the MVFRL in the meantime. As the law stands now (on the books, if not on the Majority's interpretation), nothing in the text of the MVFRL mandates that insurers invoke the judicial process in order to arrange for a medical examination of the insured that is authorized through prior contractual agreement. Thus, I find myself compelled to dissent.

As an initial matter, and as I have explained in previous opinions, I disagree respectfully with this Court's freewheeling and unwarranted invocation of "public policy" in cases arising under the MVFRL.[1] *See, e.g.*, Maj. Op. at 20, 21, 27. The only question here is whether the insurance policy provisions at issue conflict with the MVFRL and are thus not enforceable. Framing that question euphemistically or vaguely as something rooted in "public policy," rather than statutory interpretation, has created the misperception that jurists possess some inherent lordly authority to displace written agreements based upon our own idiosyncratic conceptions of what strikes us as desirable or undesirable "public policy." The resort to this "public policy" device throughout our MVFRL jurisprudence has confused more than it has clarified. More important, it risks an

---

[1] *See, e.g.*, *Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1271 (Pa. 2019) (Wecht, J., concurring) ("Courts cannot invalidate contractual provisions based upon vague and nebulous public policy concerns[.]"); *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 142 n.5 (Pa. 2019) (Wecht, J., dissenting) ("[T]oday's decision is premised more upon a policy judgment than upon a discernible legal principle.").

appearance of jurisprudence that is arbitrary, unprincipled, and ultimately illegitimate. It should be abandoned.

Turning to the merits of the issue before us, Section 1796 of the MVFRL provides that:

**(a) General rule.–**Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

75 Pa.C.S. § 1796.

The Majority concludes that, in enacting this Section, the General Assembly intended to forbid insurers from including independent medical examination ("IME") clauses in automobile insurance policies.[2] There are many reasons to doubt the validity of this conclusion. For one thing, although Section 1796 says that a claimant must attend a court-ordered IME—and requires that "good cause" be shown before such an order will issue—it does not say that insurers *must* use the procedure outlined in Section 1796 in order to procure an insured's participation in an IME. *Contra* Maj. Op. at 23 (declaring without explanation that "insurers are required to follow Section 1796(a) when seeking to compel an insured to submit to an IME" unless the insured consents).

---

[2]     The IME clause in Travelers' insurance policy requires that its insureds "[s]ubmit, as often as [Travelers] reasonably require[s] to physical exams by physicians." Travelers Automobile Insurance Policy at 16. Similarly, Allstate's policy contains a clause which provides that its insureds "shall submit to mental and physical examinations by physicians selected by us when and as often as we may reasonably require." Allstate Automobile Insurance Policy at 12 (emphasis omitted).

In interpreting Section 1796 to require that all IMEs be judicially-ordered, the Majority reveals and encourages a courtroom-centric worldview that is inconsistent with the reality of the insurance claims process. Given that many insurance claims do not result in litigation, it is difficult to imagine that the General Assembly needlessly would force parties who are not suing each other to initiate expensive, stressful, and unpredictable adversarial court proceedings. It is of course theoretically possible that the General Assembly would enact such a litigation-compelling provision. But if the General Assembly intends to force people to bring lawsuits, one would expect that the lawmakers would say so explicitly. They would not draft a provision like Section 1796, which never uses the word "insurer" and which focuses instead on the conduct of courts and claimants.

Other sections of the MVFRL demonstrate that the General Assembly is more than capable of drafting unambiguous statutory language forbidding insurers from including (and courts from enforcing) certain contractual terms in automobile insurance policies. *See, e.g.,* 75 Pa.C.S. § 1724(b) ("Provisions of an insurance policy which exclude insurance benefits if the insured causes a vehicular accident while under the influence of drugs or intoxicating beverages at the time of the accident are void."); 75 Pa.C.S. § 1711 (providing for required minimum coverage that must be included in all liability insurance policies issued within the Commonwealth); 75 Pa.C.S. § 1731(a) (providing that "[n]o motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth" unless specified conditions are met). If the General Assembly had intended—either in Section 1796 or elsewhere—to require a judicial finding of good cause as a barrier before each and every IME regardless of contractual language, it could (and presumably would) have said so explicitly. To accept the Majority's interpretation of Section 1796, one would have to assume that, despite very clearly outlawing some policy provisions in other sections of the MVFRL, the General Assembly intended to accomplish

the same in Section 1796 but was for some reason intentionally obtuse and cryptic (or perhaps just extraordinarily sloppy) in this one particular instance.

Put simply, the most natural and unforced reading of Section 1796 suggests that the General Assembly intended to give insurers a default mechanism to force claimants to undergo a physical examination. The statutory provision does not impose upon insurers an obligation to use court process to compel a medical examination of insureds; it merely grants "court[s] of competent jurisdiction" the authority to compel an examination should the need arise. 75 Pa.C.S. § 1796(a). Nothing in that Section, and nothing anywhere else in the MVFRL for that matter, suggests that a judicial order under Section 1796 is the *only* way an insurer can obtain an IME. The Majority (apparently without recognizing the irony) emphasizes that an insured voluntarily may agree to submit to an IME even absent a judicial order issued under Section 1796. *See* Maj. Op. at 22, 23. But, if insureds can agree to undergo an IME without a judicial order finding "good cause," why can't they also agree—*in their insurance contract*—that they will undergo an IME whenever their insurer requests one?

There is no answer.

The Majority offers merely that such a system would lead to an "absurd" result, since different insureds would be subject to different rules depending upon the language of their insurance policies. *Id.* at 24 (explaining that "some insureds who have such clauses in their policies would be subject to IMEs at the unilateral direction of the insurer, whereas others whose policies do not have these clauses would be entitled to the protections of Section 1796(a)"). There is nothing "absurd" about that. Insurance contracts, while highly regulated, are still contracts. They remain arrangements between

private parties.[3]  Unless the General Assembly has, by statute, explicitly restricted the right of the parties to contract, insurers and insureds can agree to whatever terms both are willing to accept.  The MVFRL did not purport to create a one-size-fits-all insurance policy for every driver in the Commonwealth, which probably explains why the Insurance Department has for decades approved of insurance policies that include IME clauses like those at issue here.

Today's novel interpretation of the MVFRL is yet another sign that this Court has assumed a quasi-legislative or even legislature-supervising role in the automobile insurance arena.[4]  The Majority declares that the IME clauses before us are unenforceable *not* because the text of the MVFRL itself forbids them, but rather because the Majority today chooses to deem those clauses ill-advised and therefore "absurd." That is not a judgment call that this Court is authorized, or even well-equipped, to make.

I respectfully dissent.

---

[3]    I certainly recognize the obvious reality that drivers are not on equal footing with insurance companies when shopping for coverage.  For one thing, purchasers of motor vehicle insurance are presented with a take-it-or-leave-it decision, and I have no doubt that many purchasers either do not fully read their policies or do not fully understand the policy terms.  But our precedents make clear that "an insured's failure to read carefully the clear and unambiguous terms of his insurance policy" will not suffice to invalidate those terms.  *Erie Ins. Exch. v. Baker*, 972 A.2d 507, 511 (Pa. 2008) (OAJC) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) (explaining that one's failure to read an insurance contract cannot justify avoidance of its terms)).  Concerns over consumer confusion, bargain imbalances, and disparities in market power should be directed to the Insurance Commissioner—the executive branch official tasked with regulating insurance within our Commonwealth—or to the General Assembly.  It is not this Court's role to regulate the insurance industry.  Perish the thought.

[4]    *Compare Gallagher*, 201 A.3d at 131 (overruling precedent and holding, for the first time, that household vehicle exclusions are unenforceable in Pennsylvania), *with id.* at 139 (Wecht, J., dissenting) (explaining that "nothing in the text of the MVFRL prohibits household vehicle exclusions").