J-A19043-19

2019 PA Super 353

CAROL EVANS                          :    IN THE SUPERIOR COURT OF
                                     :           PENNSYLVANIA
                 Appellant           :
                                     :
                                     :
                                     :
          v.                         :
                                     :
                                     :
                                     :
TRAVELERS INSURANCE COMPANY          :    No. 2531 EDA 2018

Appeal from the Order Entered August 14, 2018
In the Court of Common Pleas of Wayne County Civil Division at No(s):
531-Civil-2016

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED DECEMBER 04, 2019**

Appellant Carol Evans appeals the order of the Court of Common Pleas of Wayne County entering summary judgment in favor of Appellee Travelers Insurance Company ("Travelers"). The trial court concluded that summary judgment was warranted as it found that Evans failed to produce evidence of a fact essential to her cause of action: whether her Post-Traumatic Stress Disorder (PTSD) resulted from bodily harm sustained in the motor vehicle accident at issue. We reverse and remand for further proceedings.

On September 17, 2014, Evans was traveling southbound in her Chrysler PT Cruiser in the left passing lane of Interstate 476 (I-476 or the Pennsylvania Turnpike) near Kidder Township, Carbon County.[1] At that time,

---

[1] Evans' complaint indicates that she was driving in a "generally northerly direction" on I-476 when the accident occurred. Compl. at ¶ 3. However, at a subsequent deposition, Evans indicated that she was driving southbound on I-476 from Scranton to Jim Thorpe when the accident occurred. Evans

---

\*   Former Justice specially assigned to the Superior Court.

Rodolfo Hudson was traveling southbound in a tractor-trailer in the right lane of I-476. At some point, Hudson attempted to move his tractor-trailer to the left passing lane and violently collided with Evans' vehicle. Compl. at ¶ 1-5; Evans Deposition ("Dep."), December 14, 2017, at 15.

This forceful impact cracked Evans' windshield, broke the passenger side mirror off her vehicle, smashed her passenger side windows, caused broken glass to fly into the vehicle, and pushed Evans' entire vehicle to the left towards the concrete barrier. Evans regained control of her vehicle and pulled over to the right side of the interstate. Hudson pulled over his tractor-trailer, and both parties waited for emergency personnel to arrive. Dep. at 14-17.

While Evans felt pain in her head and neck immediately after the accident, she did not initially seek medical care but instead took generic pain medications. *Id*. at 19. Evans' pain in her head and neck escalated, and she began to experience dizziness in the week following the accident. *Id*. at 19-22. Her husband insisted that she get treatment at a local hospital. *Id*. at 22. Evans subsequently reported various symptoms including persistent headaches and neck pain, dizziness, balance issues, fogginess of her mental processes, extreme exhaustion, nightmares, flashbacks, and panic attacks. *Id*. at 23-25, 34-37, 40-46, 56-69, 73-75.

---

Deposition ("Dep."), December 14, 2017, at 15. This inconsistency does not affect our conclusion in this case.

Thereafter, Evans submitted to extensive medical testing, received injections into her cervical spine to alleviate pain, underwent physical therapy and rehabilitation to regain balance and address issues with cognition, and was prescribed multiple medications for pain, dizziness, and emotional distress. Dep. at 23-28, 32-34, 52-69. Several months after the collision, beginning in February 2015, Evans was evaluated and treated by psychiatrist Dr. Matthew Berger for PTSD. *Id*. at 34-37.

It is undisputed that Evans was treated for "injuries to her neck and thoracic spine with radiculopathy," and head injuries that included "concussion, closed head injury, post-concussion syndrome, vertigo, post-traumatic vascular headac[h]es, post-traumatic vestibuloneuronitis, and/or post-traumatic stress disorder (PTSD)." Compl. at ¶ 8. Evans indicated that she was advised that her injuries "may be permanent in nature." *Id*.

Evans submitted an application to her insurer, Travelers, for first party benefits coverage under her automobile policy.[2] The first party benefits endorsement requires Travelers to pay "medical expenses" of an "insured who sustains 'bodily injury' caused by an accident arising out of the maintenance or use of a motor vehicle." Endorsement, at 2 (some quotation marks omitted). The endorsement defined "medical expenses" in part as "reasonable and necessary charges incurred for … medical and rehabilitative services,

---

[2] Evans also filed a separate third-party action against Hudson and other parties in federal court. It appears the outcome of that litigation was pending at the time that the lower court entered summary judgment in this case.

- 3 -

including but not limited to … psychiatric, and psychological services." ***Id***. at 1. The endorsement defined "bodily injury" as "accidental bodily harm to a person and that person's resulting illness, disease, or death." ***Id***.

While Travelers initially paid for Dr. Berger's treatment of Evans' PTSD, Travelers subsequently denied coverage for future treatment. Evans' counsel sent Travelers a letter from Dr. Berger, who indicated he was treating Evans for PTSD related to the motor vehicle accident and that continued treatment of Evans' PTSD was "medically necessary." Berger Letter, 8/26/15, at 1.

On October 7, 2015, Travelers' claims representative, Kami Hause, indicated that, while Travelers did not dispute that Evans sustained physical injuries in the accident, Travelers claimed Evans' PTSD does not constitute "bodily injury" as defined by the endorsement. Hause Letter, 10/7/15, at 1. Hause asserted that the endorsement's definition of bodily injury was identical to the policy language in ***Zerr v. Erie Ins. Exchange***, 667 A.2d 237 (Pa.Super. 1995), in which this Court determined that emotional or mental injuries were not covered under that definition of bodily injury, unless they were caused by a physical injury. Hause Letter, 10/7/15, at 1.

Evans filed this cause of action in the Court of Common Pleas of Wayne County, arguing that Travelers breached the parties' insurance contract.[3,4]

---

[3] Evans is a resident of Wayne County, Pennsylvania.
[4] In her complaint, Evans also contended that Travelers' conduct and actions constituted bad faith in violation of 42 Pa.C.S.A. § 8371. After Travelers' filed preliminary objections, the parties entered a stipulation that the bad faith count would be stricken from the complaint. Stipulation, 5/1/17, at 1.

- 4 -

Evans' complaint alleges that "Travelers acted with no reasonable foundation in refusing to pay first party benefits when due, with respect to the unilateral denial of payment for treatment of head and neck injuries and *sequelae* of same, including psychological, neuropsychological, and/or emotional manifestations." Compl. at ¶ 36 (emphasis added). In its answer and new matter, Travelers asserted that "[t]he subject Travelers Policy and Pennsylvania case law bar coverage for emotional and mental injuries which are not caused by physical injury." Answer at ¶ 47.

On May 30, 2018, Evans filed a Motion for Partial Summary Judgment, arguing that she was entitled to receive first party benefits for the treatment of her PTSD, which she sustained in the accident with concomitant physical injuries. Evans also argued that Travelers' strict interpretation of the policy conflicted with the Motor Vehicle Financial Responsibility Law (MVFRL) and violated public policy. On the same day, Travelers filed a Motion for Summary Judgment, claiming Evans was not entitled to receive coverage for treatment for PTSD, which did not result from the physical injuries she sustained in the collision as required by policy language.

In an opinion and order entered August 14, 2018, the trial court granted summary judgment in favor of Travelers, denied Evans' motion for summary judgment, and dismissed Evans' complaint with prejudice. Specifically, the trial court found that Travelers was entitled to summary judgment as Evans "failed to produce evidence that her mental injuries resulted from her physical

injuries, which is essential to the cause of action." Trial Court Opinion (T.C.O.), 8/14/18, at 5. This timely appeal followed.

Evans raises the following issues for our review on appeal:

I.     Did the trial court err in granting [Travelers'] Motion for Summary Judgment, denying [Evans'] Motion for Partial Summary Judgment, and dismissing [Evans'] Complaint when there was no genuine issue or dispute of material fact that [Evans] suffered concomitant physical injuries, in addition to her psychiatric injuries, as a result of the motor vehicle collision at issue; psychiatric services were a covered first party medical expense pursuant to her policy with [Travelers]; and [Travelers] based their denial and the trial court based its opinion solely upon the case of *Zerr v. Erie Ins. Exchange*, 667 A.2d 237 (Pa.Super. 1995)?

II.    Did the trial court err in granting [Travelers'] Motion for Summary Judgment, denying [Evans'] Motion for Partial Summary Judgment, and dismissing [Evans'] Complaint when [Travelers'] and the trial court's interpretation of the policy language at issue and *Zerr* impermissibly conflicts with the provisions of the MVFRL and violates public policy?

Evans' Brief, at 4.

In reviewing a trial court's order granting summary judgment, we are guided by the following principles:

When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the

granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.

***Gallagher v. GEICO Indem. Co.***, ___Pa.___, 201 A.3d 131, 136–37 (Pa. 2019) (citations omitted).

In interpreting the language of an insurance policy, we recognize that:

we must apply general principles of contract interpretation, as, at base, an insurance policy is nothing more than a contract between an insurer and an insured. ***401 Fourth St., Inc. v. Inv'rs Ins. Grp.***, 583 Pa. 445, 879 A.2d 166, 171 (2005). In so doing, we must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." ***Id***. Just as in statutory construction, "[w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language." ***Id***. Importantly, however, provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws. ***Prudential Prop. & Cas. Ins. Co. v. Colbert***, 572 Pa. 82, 813 A.2d 747, 751 (2002).

***Gallagher***, 201 A.3d at 137.

Evans first argues that the trial court erred in determining that treatment for PTSD that she sustained in the accident is not covered under her policy with Travelers. Evans argues that her PTSD and other mental injuries, sustained with concomitant physical injuries, constitute "bodily injury" under the policy language. Evans also contends that the trial court erred in finding that this case was controlled by this Court's prior decision in ***Zerr***, which Evans argues is distinguishable.

In ***Zerr***, the insured was traveling on the Pennsylvania Turnpike and was forced to swerve off the road after a tractor-trailer attempted to change lanes too quickly in front of the insured's vehicle. However, "the two vehicles

never made contact with one another, and Mr. Zerr suffered no physical harm at the scene." *Zerr*, 667 A.2d at 237. Zerr sought first party benefits under his own policy for coverage for PTSD, globus hystericus, anxiety attacks, driving phobia, and numerous physical symptoms, which he alleged, were caused by his emotional experience on the highway. The insurer, Erie, denied responsibility to pay benefits for Zerr's emotional injuries, as Zerr suffered no physical injuries at the time of the incident. Zerr's policy contained an identical definition of bodily injury: "accidental bodily harm to a person and that person's resulting illness, disease, or death." *Id*. at 238.

A three-judge panel of this Court affirmed the trial court's decision to grant Erie's preliminary objections in the nature of a demurrer. Even though Zerr had reported physical manifestations of his emotional distress, this Court found Zerr had not sustained a "bodily injury" as defined by his policy or the MVFRL as his "injury did not result in an illness, but rather his illness resulted in a bodily injury." *Id*. at 239. Further, the *Zerr* Court reasoned that

> neither the legislature nor the Pennsylvania Supreme Court has yet to erect a bridge between bodily injury and mental injury, in the context of automobile insurance law; that is, a distinction between physical and psychological maladies remains, such that one who suffers psychological illness cannot successfully claim benefits under the MVFRL for "injury."

*Id*. at 240. Thus, the *Zerr* Court concluded that "the law states with certainty that no recovery is possible, by means of the MVFRL or [the insured's] policy, for mental injury which is not the *result* of a bodily injury." *Id*. (emphasis added).

- 8 -

However, while the **Zerr** court held that an individual who suffers psychological illness cannot successfully claim benefits under the MVFRL for "injury," this Court held, in a different context, that a plaintiff who exhibited "symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and ... ongoing mental, physical and emotional harm," sufficiently set forth physical manifestations of emotional distress or physical harm to support an action for negligent infliction of emotional distress (NIED). **Love v. Cramer**, 606 A.2d 1175, 1179 (Pa.Super. 1992).

This Court has also determined that a plaintiff sufficiently established that she sustained physical harm as a result of emotional distress as she experienced "knots" in her stomach, nightmares, low self-esteem, was easily frightened, and suffered major depression, for which she sought professional counseling for ongoing mental and physical harm. **Brown v. Phila. Coll. of Osteopathic Med.**, 674 A.2d 1130, 1137 (Pa.Super. 1996). **See also Schmidt v. Boardman Co.**, 608 Pa. 327, 382, 11 A.3d 924, 958 (2011) (Baer, J., concurring) (asserting that the appellees' physical manifestations of emotional trauma, which resulted from witnessing harm to a close relative, constituted "physical harm" or "physical injury" as contemplated by the Restatement (Second) of Torts Section 402A).[5]

---

[5] Evans asks that this Court consider as persuasive authority the non-precedential decision in **Lipsky v. State Farm Mut. Auto. Ins. Co.**, 565 EDA 2010 (Pa.Super. September 1, 2011) (unpublished memorandum). Although Pa.R.A.P. 126 was recently amended to allow parties to rely on non-

In applying these concepts to the contractual language at issue in this case, we observe that, in addition to her diagnosis of PTSD, Evans reported numerous physical manifestations of her emotional distress, including: persistent headaches, dizziness, balance issues, fogginess of her mental processes, extreme exhaustion, nightmares, flashbacks, and panic attacks.

Moreover, there is no dispute that Evans sustained physical injury to her head and neck as a result of this violent collision. Nevertheless, the trial court relied on **Zerr** to conclude that Evans' PTSD did not constitute "bodily injury" that her policy defined as "accidental bodily harm to a person and that person's resulting illness, disease, or death."

While this Court is bound by precedent in **Zerr** which provides that physical manifestations of emotional distress cannot constitute "bodily harm" as defined by the policy language at issue and the MVFRL,[6] **Zerr** is distinguishable as Zerr's claim for coverage was based solely on emotional injury without any accompanying physical injury whereas it is undisputed that Evans suffered both physical injuries and emotional distress (including PTSD) in her accident. Pursuant to **Zerr**, Evans is entitled to benefits under her policy if the physical harm she sustained in the accident resulted in an illness.[7]

---

precedential unpublished decisions of this Court as persuasive authority, this amendment only applies to decisions filed after May 1, 2019. As the **Lipsky** decision was filed on September 1, 2011, this unpublished memorandum cannot serve as persuasive authority.

[6] **Commonwealth v. Karash**, 175 A.3d 306, 307 (Pa.Super. 2017) ("a panel of this Court cannot overrule the decision by another panel").

[7] The parties do not dispute that PTSD constitutes an "illness."

When reviewing the record in the light most favorable to Evans and resolving all doubts as to the existence of a genuine issue of material fact against Travelers, we reject the trial court's conclusion that summary judgment was warranted based on its finding that Evans "failed to produce any evidence that her mental injuries resulted from her physical injuries." T.C.O. at 5. Evans has presented evidence to support her claim that her PTSD resulted from not only from experiencing the traumatic collision but also from her physical injuries which caused Evans continuous physical pain, affected her physical and emotional well-being, and required extensive medical testing, treatment, and rehabilitation over a period of several years. Evans asserted that she still was experiencing continuous neck pain on the day of her deposition, over three years after the accident.

We reject the trial court's conclusion that the record shows Evans' PTSD and mental injuries were solely caused by the accident and could not have been caused in part by her physical injuries, which are closely related and seemingly intertwined. While the trial court found that Evans' deposition testimony "indicates more definitively that her mental injuries resulted from the accident itself," Evans' testimony did not foreclose the possibility that her PTSD was also caused by the physical injuries. In Evans' deposition, opposing counsel did not make any inquiry to determine whether Evans' physical injuries had caused her emotional distress.

In the same manner, we disagree with the trial court's suggestion that Evans' treating psychiatrist, Dr. Berger, concluded that Evans' PTSD was

solely caused by experiencing the accident. The record contains a one-paragraph letter from Dr. Berger to Travelers which states that Evans "suffers from PTSD "related to a motor vehicle accident that occurred in September of 2014." Berger Letter, 8/26/15, at 1. The only conclusion Dr. Berger makes in the letter is that his assertion that Evans' "medications and her continued treatment in our office are medically necessary and indicated to help reduce her symptoms of PTSD." *Id.* at 1.

As a result, the record does not conclusively show that Evans' PTSD and mental injury was solely caused by the accident as there is evidence that her emotional trauma was intertwined with or related to her physical injuries.

As such, we find there is a genuine issue of a material fact as to a necessary element of the cause of action: whether Evans' PTSD and other mental injury was caused by her bodily harm sustained in the accident. Accordingly, the trial court erred in entering summary judgment in favor of Travelers.

Evans also argues that the trial court's interpretation of the policy in this case conflicts with the MVFRL and violates public policy. More specifically, Evans asserts that the trial court's interpretation of the policy at issue results in "illusory coverage," as she alleges that she was denied coverage even though she paid additional premiums for Added Party Benefits.

Evans points out that, while her policy set forth the minimum limit of liability for Basic First Party Benefits at $5,000 for Basic "Medical Expenses," the first party benefits endorsement allowed the insured to pay additional

premiums for several options that would require Travelers to provide Added Party Benefits. Evans emphasizes that she paid additional premiums to receive "Increased Medical Expenses," in which Travelers' limit of liability was raised to $100,000.

We are not persuaded by Evans' claim that she is entitled to payment for her psychiatric treatment based on her payment of additional premiums for Added Party Benefits. As noted above, the endorsement defines "medical expenses" in part as, "reasonable and necessary charges incurred for … medical and rehabilitative services, including but not limited to … psychiatric, and psychological services." Endorsement, at 1. The endorsement provides that Travelers would pay for "medical expenses" for an insured who sustains "bodily injury" arising out of the maintenance or use of a motor vehicle.

As noted above, Evans' policy contains consistent definitions of bodily injury as those at issue in *Zerr* and in the MVFRL, which defines "bodily injury" as "accidentally sustained bodily harm to an individual and that individual's illness, disease or death resulting therefrom." 75 Pa.C.S.A. § 1702. We reiterate that this Court is bound by this Court's interpretation of the identical definition of "bodily injury" as set forth in *Zerr*.

Evans did not pay additional premiums for "illusory coverage," but instead chose to pay additional premiums for the option of "Increased medical expenses," which raised Travelers' limit of liability to provide coverage for the insured's "bodily injury" from $5,000 to $100,000. Endorsement, at 2. It is inconsequential that Evans chose to pay for such Added Party Benefits, as it

did not relieve Evans of the requirement that she show that she sustained "bodily injury" in her motor vehicle accident, which we have addressed above. Evans does not develop any argument to support her claim that the payment of additional premiums allowed her access to coverage for psychiatric treatment that was unavailable otherwise.

However, in light of our previous discussion, we find that a genuine issue of material fact exists as to whether Evans' PTSD resulted from her bodily harm that she sustained in the motor vehicle accident at issue. As this issue can be explored further on remand, we conclude that the trial court erred in granting summary judgment in favor of Travelers. We reverse the trial court's order granting summary judgment in favor of Travelers and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/4/19