NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2935
_____

CYNTHIA G. EBERLY, INDIVIDUALLY, AND AS EXECUTRIX
OF THE ESTATE OF BRYAN L. EBERLY, DECEASED,

Appellant

v.

LM GENERAL INSURANCE COMPANY AND
LIBERTY MUTUAL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-20-cv-06308)
District Judge: Honorable Edward G. Smith
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on June 12, 2024

Before: CHAGARES, *Chief Judge*, JORDAN, and SCIRICA, *Circuit Judges.*

(Filed:  August 1, 2024)
_____

OPINION[*]
_____

_____

   [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

In this action for underinsured motorist ("UIM") benefits, the sole issue on appeal is whether a "regular use" exclusion in plaintiff/appellant Cynthia G. Eberly's policy issued by defendant/appellee LM General Insurance Co. ("LM General") violates Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. §§ 1701 *et seq.* ("MVFRL"). We conclude that it does not, and so we will affirm.

## I.

The facts of this case are straightforward and undisputed.

Cynthia's husband, Bryan Eberly, was killed in a car crash in June 2016. He was operating a vehicle owned and provided for his regular use by his employer, BJ Baldwin Electric, Inc., in the course and scope of his employment. At the time of the accident, Bryan and Cynthia were insured under a policy issued by LM General that provided for "stacked underinsured motorists coverage in the amount of $250,000.00 per person" and "insured two motor vehicles." Appx. 33-35 ("Stip.") ¶¶ 8-9. In addition, the Eberlys' son, Adam Eberly, who resided with them at the time, was the named insured on another policy issued by LM General that provided for "non-stacked underinsured motorists coverage in the amount of $250,000.00" and "insured one motor vehicle." *Id.* ¶¶ 10-13. However, neither policy insured the vehicle Bryan was operating at the time of the accident. Rather, both policies contained a provision excluding coverage for bodily injury sustained

> [b]y an "insured", as defined in this endorsement, while using, "occupying," or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Underinsured Motorists Coverage under this policy.

2

Appx. 11 (citation omitted).

As executrix of Bryan's estate, Cynthia submitted demands for underinsured motorist coverage under both policies. LM General denied those claims citing the regular use exclusion in both policies. Cynthia then initiated this action in the Lancaster County Court of Common Pleas, seeking, among other things, a declaration of coverage under the two policies. LM General timely removed the suit to the United States District Court for the Eastern District of Pennsylvania. At the District Court's direction, the parties filed a stipulation of facts and cross-motions for summary judgment concerning the enforceability of the regular use exclusion. Cynthia argued the regular use exclusion violated sections 1731 and 1738 of the MVFRL as interpreted by the Pennsylvania Supreme Court in *Gallagher v. Geico Indemnity Co.*, 201 A.3d 131 (Pa. 2019). The District Court granted LM General's motion and denied Cynthia's motion, holding that "the regular use exclusion does not violate [either sections 1731 or 1738 of] the MVFRL, that *Gallagher* does not apply to the instant case, and that the regular use exclusion operates to bar coverage in this case." *Id.* at 12.[1]

This timely appeal followed.[2]

---

[1] Cynthia subsequently filed a motion for post-judgment relief under Federal Rule of Civil Procedure 60(b), which the District Court denied.

[2] After the parties informed us that the issue of whether a regular use exclusion violates the MVFRL was currently pending before the Pennsylvania Supreme Court in *Rush v. Erie Insurance Exchange*, No. 77 MAP 2022, we decided to hold the matter C.A.V. pending the Pennsylvania Supreme Court's resolution of *Rush*. The Pennsylvania Supreme Court issued its decision on January 29, 2024. *See Rush v. Erie Ins. Exch.*, 308 A.3d 780

Cynthia does not dispute that Bryan was operating a vehicle owned by his employer and provided to him for his regular use at the time of his accident, or that the regular use exclusions in both policies issued to the Eberlys by LM General unambiguously operate to bar coverage. Instead, she argues that the regular use exclusions are unenforceable as a matter of law under the MVFRL—specifically, that the exclusions violate section 1731's requirement that insurers offer underinsured motorist coverage, and that they operate as a waiver of inter-policy stacking in violation of section 1738 as interpreted by the Pennsylvania Supreme Court in *Gallagher*. We need only address the latter argument, however, as the Pennsylvania Supreme Court recently concluded that a "'regular use' exclusion is a permissible limitation of UIM coverage under the MVFRL" and does not violate section 1731. *Rush*, 308 A.3d at 802.[4]

---

(Pa. 2024). At our direction, the parties filed supplemental briefs on February 19, 2024 addressing *Rush*'s impact on the issues in this appeal.

[3] The District Court had jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the parties' cross-motions for summary judgment. *Moore v. Walton*, 96 F.4th 616, 622 (3d Cir. 2024). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[4] Indeed, Cynthia no longer appears to be pursuing her section 1731 argument in light of *Rush*. *See* Cynthia Supp. Br. 2 (recognizing that the Pennsylvania "Supreme Court determined that Section 1731 does not stand in conflict with the regular use exclusion"). With that said, she is correct that the Pennsylvania Supreme Court explicitly declined to consider whether the regular use exclusion violates section 1738. *See Rush*, 308 A.3d 802 n.30 ("The Insured's final statutory argument is that the 'regular use' exclusion violates Section 1738 of the MVFRL, which governs stacking of UIM coverage. Given that the

Section 1738 provides that "[w]hen more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured" and "[t]he limits of coverages available . . . shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa. C.S.A. § 1738(a). The Pennsylvania Supreme Court has interpreted this provision to mandate "stacked UM/UIM coverage [as] the default coverage available to every insured . . . on all vehicles and all policies" absent express waiver. *Gallagher*, 201 A.3d at 137. Thus in *Gallagher*, a "household vehicle exclusion" which purported to exclude from coverage any injury involving a vehicle "not insured . . . under this policy" was invalid under section 1738 "as it act[ed] as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form" but instead "decided to purchase stacked UM/UIM coverage" for both his motorcycle and car from the same insurer. *Id.* at 133, 138.

Cynthia contends "*Gallagher* stands for the proposition that insurance policy provisions that conflict with the specific requirements of the MVFRL will be declared invalid and unenforceable." Cynthia Br. 14; *see also* Appx. 13 (arguing before the District Court that *Gallagher* "represents a new lens through which the Pennsylvania Supreme Court will now view challenges to the MVFRL and questions pertaining to automobile

---

facts of this case do not implicate stacking of coverage, we need not address this claim."); *accord* Cynthia Supp. Br. 1.

insurance policy language" (citations omitted)). To her, because "the regular-use exclusion has the effect of denying access to the UIM coverage she purchased and paid premiums for" it must be "a violation of section 1738 and renders the regular-use exclusion invalid for the same reasons the *Gallagher* court found the household vehicle exclusion invalid." Cynthia Br. 19.

We disagree. To start, Cynthia overstates the import of *Gallagher*. The Pennsylvania Supreme Court in *Gallagher* took great care to note the "narrow[ness]" of its decision, emphasizing "we offer no opinion or comment on the enforceability of any other exclusion to UM or UIM coverage or to coverage in general, including exclusions relating to racing and other inherently dangerous activities." *Gallagher*, 201 A.3d at 138 n.8. And subsequent Pennsylvania Supreme Court decisions have consistently declined to extend *Gallagher*'s holding beyond its facts. *See, e.g.*, *Erie Ins. Exch. v. Mione*, 289 A.3d 524, 530 (Pa. 2023) ("We reiterate today that the holding in *Gallagher* was based upon the unique facts before us in that case, and that the decision there should be construed narrowly."); *see also Rush*, 308 A.3d at 799-800 (following *Mione* and declining to rely on *Gallagher* because *Mione* "clarif[ied] the scope of *Gallagher*'s holding"). In fact, while *Rush* did not address the validity of regular use exclusions under section 1738, it did reject the very argument Cynthia puts forward as to *Gallagher*'s significance. *See Rush*, 308 A.3d at 799 (rejecting the argument that "*Gallagher* stood for the proposition that the 'household' exclusion was invalidated in its entirety as conflicted with the language of the MVFRL" and that "we should follow its analysis and conclude that absent a waiver of coverage . . . , UIM coverage is available without regard to the 'regular use' exclusion").

6

The Pennsylvania Supreme Court even went so far as to suggest that *Gallagher* has no bearing on the validity of regular use exclusions. *See id.* at 799-800 ("[T]he Insureds' argument and some federal courts' predictions that *Gallagher* controls the enforceability of the 'regular use' exclusion to UIM coverage conflates issues surrounding stacked UIM coverage under Section 1738 with the issue of portability of UIM coverage arising under 1731." (footnote omitted)).

In addition, the factual differences between this case and *Gallagher* trump any similarities. Gallagher was injured while operating a motorcycle which he owned and for which he purchased stacked coverage from the defendant/insurer. *Gallagher*, 201 A.3d at 132-33. He then sought to stack coverage between the motorcycle policy and another policy issued to him by the same insurer that also provided stacked coverage on additional vehicles he owned. *Id.* at 133. In contrast, Bryan was injured while operating a vehicle he neither owned nor for which he purchased stacked coverage from LM General. Yet Cynthia inexplicably seeks to stack coverage between her two LM General policies, neither of which covers the vehicle Bryan was driving. What is more, one of those policies—the policy for which Adam Eberly was a named insured—does not even provide for stacked coverage.

These distinctions matter for at least two reasons. *First*, that Gallagher purchased his two policies from the same insurer meant the insurer was on notice of the possibility that Gallagher might stack between his two policies. The insurer therefore had the opportunity to charge higher premiums to compensate for that additional risk. *See Gallagher*, 201 A.3d at 138. In contrast, LM General had no way of knowing of (and thus

7

was not compensated for) the risk that Bryan or Cynthia might seek to stack between the LM General policies and whatever policy covered the car Bryan was operating at the time of his accident.

*Second*, while the household vehicle exclusion in *Gallagher* operated to bar stacking between the two policies under all circumstances, here, the Eberlys can access stacked coverage on their own cars and on any cars they drive provided they do not fit within any of the applicable exclusions to such coverage. In other words, the regular use exclusion in this case only operates to bar stacking in the limited circumstance presented here: where the claimant was operating a vehicle which he did not own but that was provided to him for his regular use. The regular use exclusion, therefore "is neither an implicit waiver of coverage nor an improper limitation on the statutorily mandated coverage" but rather "functions as a reasonable preclusion of coverage of the unknown risks associated with operating a regularly used, non-owned vehicle." *Williams v. GEICO Gov't Employees Ins. Co.*, 32 A.3d 1195, 1208 (Pa. 2011).

Accordingly, the regular use exclusion does not violate section 1738 of the MVFRL, and so the District Court did not err in granting LM General's motion for summary judgment and denying Cynthia's cross-motion.

III.

For the foregoing reasons, we will affirm.