J-A11034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THOMAS L. SUTHERLAND AND | : | No. 1113 WDA 2020 |
| LUCINDA S. SUTHERLAND | : | |

Appeal from the Order Dated May 22, 2020
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): 10437 of 2019, C.A.

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED: July 7, 2021**

Appellant, Erie Insurance Exchange (Erie), takes this interlocutory appeal by permission[1] from the order entered in the Lawrence County Court of Common Pleas, denying Erie's motion for judgment on the pleadings. Erie avers the trial court erred in: (1) concluding ***Eichelman v. Nationwide Ins. Co.***, 711 A.2d 1006 (Pa. 1998), was effectively abrogated by ***Gallagher v. Geico Indem. Co.***, 201 A.3d 131 (Pa. 2019); and (2) applying ***Gallagher*** to

_____

[1] ***See*** 42 Pa.C.S. § 702(b) ("When a court . . . shall be of the opinion that [an interlocutory order] involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order."); Pa.R.A.P. 312 ("An appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission).").

conclude the "household exclusion" clause, in Erie's insurance policy with Appellees, contravened Section 1738 of Motor Vehicle Financial Responsibility Law[2] (MVFRL) and was thus not enforceable. We conclude these issues are governed by this Court's recent decision in **Erie Ins. Exch. v. Mione**, ___ A.3d ___, 2021 WL 1847751 (Pa. Super. May 10, 2021) (**Mione**), and reverse.

## I. Facts & Procedural History

The trial court aptly summarized the underlying facts, which were not in dispute, and the relevant procedural history:

> On May 27, 2017, [Appellee Thomas] was injured while operating his 2017 Indian Scout 60 motorcycle when he was struck by an underinsured motorist . . . in Wilmington Township, Mercer County[. Thomas'] motorcycle was insured through a policy issued by Progressive Insurance Company (hereinafter "Progressive"). **He waived underinsured motorist [(UIM)[3]] coverage for all vehicles insured [in the Progressive] policy.**
>
> [Both Appellees] also maintained an insurance policy issued by [Erie], which provided coverage for a 2000 Toyota Tundra and a 2012 Ford Escape. [Appellees] purchased [UIM] coverage through the Erie . . . policy with limits of $100,000 per person and $300,000 per accident. **[Appellees] did not execute a waiver of stacking[4] for that insurance policy and paid premiums**

---

[2] 75 Pa.C.S. §§ 1701-1799.7.

[3] "UIM coverage is triggered when a . . . tortfeasor . . . injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." **Mione**, 2021 WL 1847751 at *1 n.3.

[4] "The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." **Mione**, 2021 WL 1847751 at *1-2 n.7 (citation omitted).

**consistent with obtaining stacked coverage. However, the policy contained a household exclusion,** which [stated] that [the] insurance does not apply to the following:

4. damages sustained by "anyone we protect" while:

a. "occupying" or being struck by a "motor vehicle" owned or leased by "you" or a "relative," but not insured for Uninsured or underinsured Motorists Coverage under this policy . . . [.]

[Appellee Thomas] requested [Erie to] pay UIM benefits for the injuries sustained in the motorcycle accident pursuant to [the Erie] automobile policy, which [Erie] rejected by letter dated June 23, 2017, stating the household exclusion applied.

On March 27, 2019, [Appellees] requested [Erie] reconsider its denial of UIM coverage based upon the Pennsylvania Supreme Court's [then recent] decision in ***Gallagher***[, 201 A.3d 131. Erie] refused to approve [Appellees'] claim as it assumed the position [Appellees] were not entitled to UIM coverage concerning the motorcycle.

On April 29, 2019, [Erie] initiated this case by filing an Action for Declaratory Judgment[,] seeking enforcement of the household vehicle exclusion and [Appellees'] election to reject underinsured motorist benefits. [Appellees filed] an Answer and crossclaims . . . on June 21, 2019[, for, *inter alia*,[5]] Declaratory Relief-Underinsured Motorist Benefits, . . . Bad Faith pursuant to 42 Pa.C.S.A. § 8371, . . . and breach of contract.

[Erie] filed Preliminary Objections to [Appellees'] Crossclaims . . . and oral argument on that matter was held on October 28, 2019.

[Erie] filed its Answer and New Matter to [Appellees'] Counterclaims on December 11, 2019.

_____

[5] Appellees also presented a counterclaim of a violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3, but subsequently agreed to dismiss this count. Trial Ct. Op., 5/22/20, at 3.

Subsequently, [Erie] filed the current motion for Judgment on the Pleadings on March 3, 2020, contending [Appellees] are not entitled to underinsured motorist coverage under the Erie policy based upon the . . . decision in *Eichelman*[, 711 A.2d 1006.] Conversely, [Appellees continue to] argue they are entitled to underinsured motorist coverage as household exclusions have been determined to be unenforceable as those clauses violate the Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL") pursuant to . . . *Gallagher* . . . .

Trial Ct. Op. at 1-3 (paragraph breaks added).

On May 22, 2020, the trial court entered the underlying order denying Erie's motion for judgment on the pleadings. In so ruling, the court rejected Erie's reliance on *Eichelman*, concluding it was "no longer controlling precedent . . . following the Supreme Court's decision in *Gallagher*." Trial Ct. Op. at 17. The court reasoned that *Gallagher* held "household exclusions violate the MVFRL and are unenforceable." *Id.* at 16.

On July 13, 2020, Erie filed a motion, requesting the trial court certify its May 22nd order as an appealable interlocutory order. The trial docket does not indicate any court action on this motion. Nevertheless, on August 12, 2020, Erie filed with this Court a petition for permission to appeal from the May 22nd order, which was granted on October 22, 2020.[6] *See* 42 Pa.C.S. § 702(b); Pa.R.A.P. 312.

---

[6] In a December 2, 2020, order, the trial court stated it would not request a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

For ease of review, before addressing Erie's arguments on appeal, we review the **Eichelman** and **Gallagher** decisions, and the trial court's opinion.

## II. Summary of 1998 *Eichelman* Opinion

In **Eichelman**, the plaintiff, Eichelman, insured his motorcycle with Aegis Security Insurance Company; in this policy, he expressly waived UIM coverage. **Eichelman**, 711 A.2d at 1007. Eichelman lived with his mother and her husband, who each had an insurance policy, on their respective vehicles, with the defendant, Nationwide Insurance Company (Nationwide). **Id.** at 1007 & n.3. Both Nationwide policies "provided underinsured motorist coverage for the named insured and any relative who resided with the named insured."[7] **Id.** at 1007. However, the Nationwide policies also included a household exclusion clause, which stated that UIM coverage did not apply to:

> . . . Bodily injury suffered while occupying a motor vehicle owned by you or a relative not insured for Underinsured Motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle.

**Id.**

Eichelman "was injured when his motorcycle was struck by a pick-up truck . . . negligently operated by another individual." **Eichelman**, 711 A.2d at 1007. Eichelman received payment from the other driver's automobile insurance policy, then made a claim for UIM coverage under his mother's and

---

[7] Nationwide did not dispute that the driver qualified as a "relative" under the policies. **Eichelman**, 711 A.2d at 1007.

her husband's Nationwide policies. *Id.* Nationwide denied the claim pursuant to the "household exclusion" clauses in both policies. *Id.*

Eichelman filed "a complaint requesting a declaratory judgment that he was entitled to [UIM] benefits under the two [Nationwide] policies . . . and further asserting that the 'household exclusion' clause is against public policy." *Eichelman*, 711 A.2d at 1007. Ultimately, the trial court granted summary judgment in favor of Eichelman. *Id.* The Pennsylvania Superior Court reversed, concluding the household exclusion was valid. *Id.* at 1008.

> The Pennsylvania Supreme Court granted review on the question of
>
> whether **a person who has voluntarily elected to forego underinsured motorist coverage on his own vehicle is precluded from recovering underinsured motorist benefits** from separate automobile insurance policies issued to family members with whom he resides as a result of a "household exclusion" clause excluding underinsured motorist coverage for bodily injury suffered while occupying a motor vehicle not insured for underinsured motorist coverage.
>
> *Eichelman*, 711 A.2d at 1006-07 (emphasis added).
>
> The Court cited the legislative intent behind the MVFRL:
>
> > The repeal of the No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101, and the simultaneous enactment of the MVFRL, reflected a legislative "concern for the spiralling consumer cost of automobile insurance and resultant increase in the number of uninsured motorists driving on public highways."
>
> > The purpose behind underinsured motorist coverage is to protect the insured from the risk that a negligent driver of another vehicle will cause injury to the insured and will have inadequate insurance coverage to compensate the insured for his injuries.
>
> *Eichelman*, 711 A.2d at 1008-09 (citations omitted).

- 6 -

Pertinently, the **Eichelman** Court concluded the household exclusion clause, in that case, was consistent with the legislative intent behind the MVFRL. **Eichelman**, 711 A.2d at 1010. In support, it provided the following reasoning: the purpose of UIM coverage, "protecting innocent victims from underinsured motorists who cannot adequately compensate" them, does not "overrid[e] every other consideration of contract construction." **Id.** To this end, Eichelman voluntarily chose not to purchase UIM coverage in return for reduced insurance premiums, and furthermore, he admitted "he was not aware that his mother and her husband had insurance policies which could have possibly covered him." **Id.** It was "not readily apparent that [Nationwide] knew of [Eichelman's] existence when it issued the two insurance policies" to his mother and her husband, nor that his mother and her husband intended to provide UIM coverage to Eichelman. **Id.** Furthermore, enforcing the household exclusion clause "will have the effect of holding [Eichelman] to his voluntary choice." **Id.** at 1010.

The Court held:

> [A] person **who has voluntarily elected not to carry underinsured motorist coverage on his own vehicle** is not entitled to recover underinsured motorist benefits from separate insurance policies issued to family members with whom he resides where clear and unambiguous "household exclusion" language explicitly precludes underinsured motorist coverage for bodily injury suffered while occupying a motor vehicle not insured for underinsured motorist coverage.

**Id.** at 1010 (emphasis added).

### III. Summary of 2019 *Gallagher* Opinion

Twenty years after **Eichelman**, the Pennsylvania Supreme Court issued a decision in **Gallagher**. In that case, the plaintiff Gallagher was operating his motorcycle when another driver "failed to stop his pickup truck at a stop sign[, collided] with Gallagher's motorcycle" and caused Gallagher severe injuries. **Gallagher**, 201 A.3d at 132. At the time of the accident, Gallagher had two insurance policies with GEICO — one for his motorcycle, with $50,000 UIM coverage, and the second for his two automobiles, with $100,000 UIM coverage for each vehicle. **Id.** at 132-33. "Gallagher opted and paid for stacked UM and UIM coverage when purchasing both policies." **Id.** at 133.

Gallagher subsequently "filed claims with GEICO seeking stacked UIM benefits under both of his GEICO policies." **Gallagher**, 201 A.3d at 133. GEICO paid him the

> policy limits of UIM coverage available under the Motorcycle Policy, [but] denied his claim for stacked UIM benefits under the Automobile Policy. GEICO based its decision on a household vehicle exclusion found in an amendment to the Automobile Policy[, which stated:] "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy." Because Gallagher suffered bodily injury while occupying his motorcycle, which was not insured under the Automobile Policy, GEICO took the position that the household vehicle exclusion precluded Gallagher from receiving stacked UIM coverage pursuant to that policy.

**Id.** (record citations omitted).

Gallagher commenced suit, claiming "that, because he purchased stacked UIM coverage as part of the Automobile Policy, GEICO is required to

provide that coverage." ***Gallagher***, 201 A.3d at 133. Ultimately, the trial court granted summary judgment in favor of GEICO, and on appeal, the Superior Court affirmed. ***Id.*** at 135.

The Pennsylvania Supreme Court accepted review on the question of "whether a 'household vehicle exclusion' contained in a motor vehicle insurance policy violates Section 1738 of the [MVFRL,] because the exclusion impermissibly acts as a de facto waiver of stacked" UIM motorist coverage. ***Gallagher***, 201 A.3d at 132. The Court summarized the provisions of Section 1738:

> Subsection 1738(a) unambiguously states that the limits of coverage for each vehicle owned by an insured "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa.C.S. § 1738(a). This provision specifically applies "[w]hen more than one vehicle is insured under one or more policies" providing for UM[8]/UIM coverage. ***Id.*** In other words, stacked UM/UIM coverage is the default coverage available to every insured and provides stacked coverage on all vehicles and all policies.
>
> Under the MVFRL, insureds can choose to waive stacked coverage. [75 Pa.C.S.] § 1738(b). If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the different cost of coverage. [75 Pa.C.S.] § 1738(c). Importantly, the MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. [75 Pa.C.S.] § 1738(d). This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.

---

[8] "UM" refers to "uninsured motorist."

*Gallagher*, 201 A.3d at 137.

The *Gallagher* Court held the household vehicle exclusion, in the automobile policy, violated the MVFRL and was not enforceable. *Gallagher*, 201 A.3d at 138. The Court reasoned, *inter alia*, that it was undisputed that "Gallagher did not sign the statutorily-prescribed UIM stacking waiver form for either of his GEICO policies." *Id.* at 137. The Court determined the household vehicle exclusion

> is inconsistent with the unambiguous requirements Section 1738 of the MVFRL **under the facts of this case** insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form. Instead, **Gallagher decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision**. He simply never chose to waive formally stacking as is plainly required by the MVFRL.

*Id.* at 138 (emphases added).

### IV. Trial Court Opinion

We now set forth the trial court's rationale for concluding the household exclusion clause in this case was not enforceable, and thus denying Erie's motion for judgment on the pleadings. The court first summarized the holdings of *Eichelman* and *Gallagher*. Trial Ct. Op. at 7-11. The court also considered three federal Eastern District of Pennsylvania decisions, which applied Pennsylvania law and *Gallagher* and concluded the household exclusion clauses, in those cases, were not enforceable: *Smith v. Nationwide Mut. Ins. Co.*, 392 F.Supp.3d 540 (E.D.Pa. 2019); *Donovan v.*

*State Farm Mut. Auto. Ins. Co.*, 392 F.Supp.3d 545 (E.D.Pa. 2019); and

*Stockdale v. Allstate Fire & Casualty Ins. Co.*, 441 F.Supp.3d (E.D.Pa.

2020). Trial Ct. Op. at 11-16.

The trial court then reasoned:

> [Erie's] reliance upon *Eichelman* in this matter is misplaced as the Supreme Court's ruling in *Gallagher* is controlling. The *Gallagher* Court clearly held household exclusions violate the MVFRL and are unenforceable. Moreover, the Courts, as stated in *Smith*, *Donovan*, and *Stockdale*, have consistently permitted the recovery of stacked UIM benefits even though a household exclusion existed on each of those policies. This case is even more compelling than the aforementioned cases as [Appellee Thomas] was a named insured on both policies while the other cases included stacked coverage for a member of the named insured's household

Trial Ct. Op. at 16. The court acknowledged *Gallagher* "did not expressly

overrule or modify *Eichelman* as *Eichelman* did not address whether the

household exclusion acts as a de facto waiver of stacked UIM coverage, in

violation of the MVFRL. *Eichelman* solely addressed whether the household

exclusion violated public policy, concluding that it did not." *Id.* at 17.

Nevertheless, the court considered, if it "were to accept [Erie's] position,

enforcing the household exclusion would be tantamount to a de facto waiver

of the stacked UIM coverage provided for in the Erie Policy," and thus the

exclusion was not enforceable. *Id.*

## V. Erie's Argument

On appeal, Erie presents one issue for our review:

Whether [A]ppellees are precluded from recovering uninsured and underinsured motorist benefits under a household policy that

- 11 -

insured vehicles not involved in the accident when underinsured motorist coverage was rejected on the policy that insured the vehicle in operation at the time of the accident?

Erie's Brief at 4.

Erie first avers the trial court erred in concluding *Eichelman* did not govern the issue of whether Appellees were entitled to UIM benefits under their Erie insurance policy.  Erie reiterates the holding in *Eichelman*, "that a person who voluntarily rejects UIM coverage on their own vehicle is not then entitled to recover UIM benefits form separate household policies . . . where the vehicle exclusion explicitly precludes UIM coverage."  Erie's Brief at 11.  Erie then maintains, as "acknowledged by the trial court," that *Eichelman* has not been overruled or abrogated.  *Id.* at 12.

Erie then avers "the trial court incorrectly applied the ruling in *Gallagher* to this case per both the [MVFRL] and *Eichelman*."  Erie's Brief at 14.  Erie reasons that *Gallagher*, as well as the federal district decisions cited by the trial court, are factually distinguishable from the instant matter: "Crucially in none of those cases did the insured reject UIM coverage on the vehicle that was in operation at the time of the accident."  *Id.* at 15.  Erie reasons that in contrast, here Appellees "had no UIM coverage to 'stack' onto the Erie policy and as a result a *de facto* waiver of stacked coverage would not occur if the household vehicle exclusion was enforced."  *Id.* at 14. Erie emphasizes, "The Supreme Court's concern in *Gallagher* that the household vehicle exclusion would operate as a *de facto* waiver of stacking is not at issue

in this case because there can be no stacking on to a policy where UIM coverage has been rejected." *Id.* at 17

In support, Erie relies on a Western District Court of Pennsylvania opinion, ***Dunleavy v. Mid-Century Ins. Co.***, 460 F.Supp.3d 602 (W.D.Pa. 2020). In that case, a husband and wife were riding a motorcycle when they were struck by an automobile and suffered injuries. ***Dunleavy***, 460 F.Supp.3d at 606. The motorcycle was insured by a policy from Progressive, under which the husband had rejected UIM coverage. *Id.* The couple separately had an automobile policy with Mid-Century Insurance Company (Mid-Century), which covered two vehicles, but not the motorcycle. *Id.* This automobile policy included "a household vehicle exclusion, which states that underinsured motorist coverage does not apply '[t]o bodily injury sustained by you or any family member while occupying or when struck by any motor vehicle owned by you or any family member which is not insured for this coverage under any similar form.'" *Id.* (record citation omitted). The couple argued "that under ***Gallagher***, Mid-Century can't use the household vehicle exclusion to deny them the benefit of stacking their underinsured motorist benefits in the Mid-Century policy." *Id.* at 607. "Mid-Century counter[ed] that ***Gallagher*** is inapplicable because this isn't a stacking case at all[,]" because the couple had "no underinsured motorist coverage [under the Progressive motorcycle policy] with which to stack their Mid-Century policy." *Id.* The district court agreed with Mid-Century. *Id.* at 608-10. Furthermore,

the court cited the Eastern District of Pennsylvania decisions in **Stockdale** and **Smith** for the proposition that "[f]or **Gallagher** to apply, then, there must be underinsured motorist coverage in the first place." **Id.** at 608-09. **See also id.** at 610, *citing* **Stockdale**, 441 F.Supp.3d at 105 ("**Gallagher** did not overrule **Eichelman** because the two cases 'are not in conflict.'").

We determine this issue is governed by **Mione** and agree with Erie's analysis.

### VI. Summary of 2021 *Mione* Opinion

After the parties filed the instant briefs, this Court issued an opinion in **Mione**. Erie filed a post-submission communication in this Court, acknowledging **Mione**, as well as the recently issued opinion in **Erie Ins. Exch. v. King**, 246 A.3d 332 (Pa. Super. 2021) (discussed **infra**). Erie was likewise a party in **Mione**, and the two cases present similar facts and procedural postures.

Mione was operating his motorcycle when he was involved in a motor vehicle accident. **Mione**, 2021 WL 1847751 at *1-2. Mione insured the motorcycle with a policy from Progressive, in which he did **not** pay for stacked UIM coverage. **Id.** at *1. Mione lived with his wife, Lisa, and his daughter, Angela. **Id.** at *1-2 & n.4. Mione and Lisa had an auto policy with Erie, and separately Angela had a policy with Erie. **Id.** at *1-2. Neither of these Erie policies listed the motorcycle as a covered vehicle. **Id.** However, Mione, Lisa, and Angela paid for stacked UIM coverage on the Erie policies. **Id.**

Erie filed a declaratory judgment action, arguing Mione was precluded from recovering UIM benefits under the two Erie policies because: (1) the motorcycle was not listed as a covered vehicle under either Erie policy; and (2) both Erie policies contained a household exclusion clause that barred Mione "from recovering UIM benefits for injuries arising out of operation of a non-listed miscellaneous vehicle.[ ]" **Mione**, 2021 WL 1847751 at *1-2. Erie claimed the issue was governed by **Eichelman**, in which the plaintiff did not pay for UIM coverage on his motorcycle. **Id.** at *2. Furthermore, Erie contended, **Eichelman** was "still good law because **Eichelman** and **Gallagher** addressed . . . two factually different circumstances." **Id.** at *3. Erie then asserted **Gallagher** was not applicable, as the insured in that case had paid for stacked UIM coverage on both his motorcycle and auto policies, whereas Mione did not pay for stacked UIM coverage on his Progressive motorcycle policy. **Id.** Finally, Erie

> contend[ed] that entering judgment in its favor still affords [Mione and Lisa] the benefit of the insurance they paid for because they "chose to pay reduced premiums by not insuring the subject motorcycle under either of the Erie [Auto P]olicies, and chose to pay a further reduced premium by rejecting UM/UIM coverage outright on the policy of insurance which listed the motorcycle."

**Id.**

The trial court agreed with Erie that **Eichelman** governed the issue and that **Gallagher** was factually distinguishable. **Mione**, 2021 WL 1847751 at *3. The court reasoned that Mione had "rejected UIM benefits on his Progressive Motorcycle Policy, which means that there is no underlying policy

to 'stack' the Erie Auto Policy benefits onto." *Id.* at *3. The court thus granted Erie's motion for judgment on the pleadings. *Id.*

Mione appealed, and this Court affirmed. The panel first "acknowledge[d] that this area of the law is not particularly clear and straightforward." *Mione*, 2021 WL 1847751 at *5. The Court thus examined *Eichelman*, *Gallagher*, as well as the following decisions issued post-*Gallagher*.

In *Erie Ins. Exch. v. Petrie*, 242 A.3d 915 (Pa. Super. 2020), "an underinsured driver struck and killed Petrie's husband while he was riding his motorcycle." *Mione*, 2021 WL 1847751 at *7. At the time of the accident, Petrie and her husband had an insurance policy, through Foremost Insurance (Foremost), on the motorcycle, which **provided** UIM coverage. Petrie then sought UIM benefits under an Erie policy, which named Petrie and her husband as the insureds,

> which covered four other vehicles and had UIM coverage limits for bodily injury of "$100,000 per person/$300,000 per accident-**Unstacked**." The Erie policy also included a household exclusion, which stated that "[t]his insurance does not apply to . . . damages sustained by 'anyone we protect' while 'occupying' or being struck by a 'miscellaneous vehicle' owned or leased by 'you' or a 'relative,' but not insured for Uninsured or Underinsured Motorists Coverage under this policy."

*Id.* Ultimately, the "trial court granted Erie's motion for judgment on the pleadings, determining that there was no UIM coverage available to Petrie for the motorcycle accident under the Erie policy[.]" *Id.* at *8.

- 16 -

On appeal, the **Petrie** Court reversed, "first ascertain[ing] that the Erie policy's stacking waiver, which Petrie's husband had signed, did not explicitly provide for inter-policy stacking, so he had not knowingly waived it." **Mione**, 2021 WL 1847751 at *8. The Court then rejected Erie's argument that **Gallagher** did not apply because, unlike in **Gallagher**, Petrie's two policies were from different companies and did not purchase stacking in either policy. **Id.** The Court reasoned the facts that Petrie "did not purchase stacking or the polices are from two different companies is irrelevant because Section 1738 requires a knowing waiver of stacking from whom the insurance is being obtained — in this case, Erie." **Id.** The Court then applied **Gallagher** and reversed the grant of judgment on the pleadings. **Id.**

The **Mione** panel next considered **King**, which was decided on February 5, 2021. **Mione**, 2021 WL 1847751 at *8.

> In that case, an uninsured driver struck King's truck while he was driving in it with his paramour's niece, with whom King and his paramour resided. King owned the truck, but it was insured under a commercial policy issued to "Night Train Express, Inc.[,]" and it did not name King, or the niece, as insureds. [This commercial policy included UIM coverage.] King and his paramour additionally shared an Erie policy for a personal vehicle. After King and the niece exhausted the UM benefits available under the truck's commercial policy, they made a UM claim under the Erie policy, which contained a household exclusion and an executed stacking waiver. Erie subsequently filed a declaratory judgment action, arguing that coverage was barred due to the household exclusion and/or King's execution of the stacking waiver, and the trial court granted its motion for judgment on the pleadings.
>
> On appeal, this Court initially determined that King's execution of a stacking waiver is "irrelevant" because King and the niece cannot "'stack' benefits they receive from Erie with benefits

- 17 -

they received from [the truck's commercial policy], where [they] are not 'insureds' under the [truck's commercial] policy." . . .

*Id.* at *9 (citation omitted). The *King* Court then reasoned:

[B]ecause [King and the niece] were not "insureds" under the [truck's commercial] policy, there is no UM coverage on which to "stack" the Erie policy. Thus, the holding in *Gallagher* — that a household exclusion cannot circumvent the clear requirements of a rejection of stacking set forth in Section 1738 — is not directly applicable here.

*Id.* (citation omitted).

After considering the above cases, the *Mione* panel stated:

*Gallagher* does not seem to invalidate household exclusions in all cases, despite [Mione's] suggestions to the contrary.[ ] Instead, *Gallagher* has been interpreted by this Court to hold that a household exclusion cannot be used to evade Section 1738's explicit requirements for waiving stacking. Thus, the next question for us to decide is whether stacking and Section 1738 are implicated in this case, which would trigger applying the rule set forth in *Gallagher*.

*Mione*, 2021 WL 1847751 at *10. Erie argued "that stacking, Section 1738 — and consequently *Gallagher* — are irrelevant to this matter," and instead, that *Eichelman* applied. *Id.* Erie posited that in that (*Mione*) case, like *Eichelman*, there was "no host-vehicle UIM policy 'to stack' on top of." *Id.* Finally, Erie relied on *Dunleavy*, the Western District of Pennsylvania case likewise relied upon by Erie in the instant appeal. *See id.*

The *Mione* panel agreed with Erie and the trial court that stacking and Section 1738 were not implicated. *Mione*, 2021 WL 1847751 at *12. The panel reasoned:

- 18 -

> In ***Eichelman***, ***King***, and ***Dunleavy***, stacking was either not discussed or determined to be irrelevant because those individuals . . . did not have UM/UIM coverage under their host-vehicle policies [and thus] did not have the requisite UM/UIM coverage on which to stack other household policies with UM/UIM benefits. Similarly, here, [Mione's] Progressive Motorcycle Policy does not have UIM coverage on which to stack the Erie Auto Policies' UIM benefits. Instead, like the people in ***Eichelman*** and ***Dunleavy***, [Mione] is using the Erie Auto Policies to procure UIM coverage in the first place. Therefore, this is not a stacking case, and the rationale of ***Gallagher*** does not apply.

***Id.*** The panel further concluded ***Eichelman*** had not been overruled, and accordingly applied "***Eichelman's*** principle that a clear and unambiguous household exclusion is enforceable where the insured was operating a vehicle at the time of the accident that was covered by a separate policy not providing the insured with UM/UIM coverage because the insured had voluntarily, and validly, waived such coverage." ***Id.*** Had Mione "purchased UIM coverage under his Progressive Motorcycle Policy, this case would fall squarely within the factual scenario addressed in ***Gallagher***[,] but . . . that is not the situation before the [c]ourt." ***Id.*** at *12 n.13.

## VII. Analysis

Having considered the above authority, we now address Erie's arguments on appeal. We note the relevant standard of review:

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are

- 19 -

no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well[-]pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

"Additionally, we note that interpretation of an insurance policy presents a pure question of law, over which our standard of review is *de novo*."

***Mione***, 2021 WL 1847751 at *4 (some citations omitted).

First, pursuant to ***Mione***, we disagree with the trial court's conclusion that ***Eichelman*** has been abrogated by ***Gallagher***. ***See Mione***, 2021 WL 1847751 at *12. Furthermore, ***Eichelman*** and ***Gallagher*** are not inconsistent, as they address different factual scenarios — saliently, whether an insured has waived or purchased UIM coverage on a vehicle that is involved in an accident or other incident. Here, like the insured in ***Eichelman***, Appellee Thomas **did not** purchase UIM coverage in his Progressive policy for his motorcycle. Accordingly, he was not entitled to stacked UIM coverage under his and Appellee Lucinda's Erie policy for the automobiles, as there was no Progressive UIM coverage for the Erie coverage to stack onto. ***See id.*** This

result is consistent with the MVFRL, as Appellee Thomas voluntarily chose not to purchase UIM coverage in his motorcycle policy, and in return received reduced insurance premiums. **See Eichelman**, 711 A.2d at 1010. **If** Appellee Thomas had purchased UIM coverage in his Progressive motorcycle policy, as well as his Erie automobile policy, then **Gallagher** would apply. However, this is the not the actual scenario presented.

Accordingly, we conclude the trial court erred in concluding the household exclusion clause was not enforceable for the reasons stated in its opinion, and we reverse the order denying Erie's motion for judgment on the pleadings.

## VIII. 2109 Federal *Donovan* Opinion

At this juncture, we briefly consider the federal Eastern District of Pennsylvania Court's decision in **Donovan**. This opinion was issued in June of 2019 and cited by the trial court. **See** Trial Ct. Op. at 13-14. In **Donovan**, the plaintiff was in an accident while riding his motorcycle, which was insured by a State Farm policy in which he waived stacked UIM coverage. **Donovan**, 392 F.Supp.3d at 547. Donovan lived with his mother, who had a separate policy with State Farm for three vehicles. **Id.** Donovan filed a claim under his mother's automobile policy. **Id.** State Farm, however, denied this claim on the grounds that both Donovan and his mother waived stacked UIM coverage in their respective policies. **Id.** at 548, 550.

Donovan filed suit in the District Court, seeking a declaration that he was entitled to UIM benefits under his mother's policy, or inter-policy stacking.[9]. ***Donovan***, 392 F.Supp.3d at 548. The District Court applied Pennsylvania law "[a]s a federal judge sitting in diversity." ***See id.*** at 552. The Court repeatedly noted that Donovan's waiver of stacked coverage in his own policy was not relevant: "[I]t is [the mother's] waiver that has legal significance; . . . Donovan's waiver is irrelevant." ***Donovan***, 392 F.Supp.3d at 549, *citing **Craley***, 895 A.2d at 533 ("It is [the policy under which the plaintiff sought UIM benefits] and its exclusions that are relevant to the legal issues presented in this case."). ***See also Donovan***, 392 F.Supp.3d at 548 n.2 ("[Donovan] rejected stacked limits for his motorcycle policy, but . . . the waiver accompanying his policy is irrelevant because he is seeking benefits under his mother's policy."), 552 ("[T]he terms of . . . Donovan's policy are irrelevant under ***Craley***[.]"). Ultimately, the District Court applied ***Gallagher*** and concluded Donovan was entitled to the UIM coverage in his mother's policy. ***Id.*** at 552-53.

The United States Court of Appeals for the Third Circuit filed a petition for certification of law with the Pennsylvania Supreme Court. Our Supreme Court granted the petition on July 24, 2020, on the following issues:

---

[9] "Inter-policy" stacking is the stacking of limits available on two or more separate policies. ***Craley v. State Farm Fire & Casualty Co.***, 895 A.2d 530, 533 (Pa. 2006).

1. Is a named insured's signing of the waiver form set out at 75 Pa.C.S. § 1738(d) sufficient to waive inter-policy stacking of underinsured motorist benefits under [the MVFRL], where the policy insures more than one vehicle at the time the form is signed?

2. If the answer to Question 1 is no, is a household vehicle exclusion contained in a policy in which the named insured did not validly waive interpolicy stacking enforceable to bar a claim made by a resident relative who is injured while occupying a vehicle owned by him and not insured under the policy under which the claim is made?

3. If the answers to Questions 1 and 2 are no, is the coordination-of-benefits provision in the Automobile Policy nonetheless applicable, such that it limits . . . recovery of underinsured motorist benefits under the policy . . ., or does the lack of a valid waiver of inter-policy stacking render that provision inapplicable?

*Donovan v. State Farm Mut. Auto. Ins. Co.*, 237 A.3d 395 (Pa. 2020).

Although these discrete issues are not raised in the present appeal, we note *Donovan* and *Mione* differ in the treatment of the motorcycle policy in each case. *Donovan*, citing *Craley*, stated that in determining whether Donovan was entitled to coverage under his mother's policy, the terms of Donovan's own motorcycle policy were not relevant. *Donovan*, 392 F.Supp.3d at 548 n.2, 549, 552. The *Mione* Court, however, specifically looked to Mione's motorcycle policy to determine whether he had UM coverage, in turn to ascertain whether there was any coverage for the other policies to "stack" onto. *Mione*, 2021 WL 1847751 at *12. Thus, in *Mione*, the terms of the first policy **were** relevant.

Nevertheless, we further observe this question — whether the terms of a motorcycle policy are relevant in determining whether a party is entitled to

coverage under an automobile policy — was not an issue in the Pennsylvania Supreme Court's order granting certification of law.

### IX. Conclusion

Notwithstanding our discussion of **Donovan** above, we conclude **Mione** governs the factual circumstances and the issue presented. **See Commonwealth v. Ingram**, 926 A.2d 470, 476 (Pa. Super. 2007) (Superior Court opinions are binding precedent, which this Court must follow unless and until they are overruled by an *en banc* Superior Court panel or a higher court).

Nevertheless, we note both **Mione** and **Donovan** observed the law in this area is not entirely clear. **See Donovan**, 392 F.Supp.3d at 549 ("There is little direct authority on the intricacies of inter-policy stacking under Pennsylvania law."); **Mione**, 2021 WL 1847751 at *5 ("At the outset of our review, we acknowledge that this area of the law is not particularly clear and straightforward."). As stated above, our Supreme Court has granted review in **Donovan**, and the plaintiffs in **Mione** have filed a petition for allowance of appeal in our Supreme Court. **Erie Ins. Exch. v. Mione**, 326 MAL 2021 (*alloc.* filed June 3, 2021) (Pa. 2021). We suggest the various issues discussed above may be clarified by the Pennsylvania Supreme Court on review.

For the foregoing reasons, we conclude **Eichelman** governs the factual circumstances and the issue presented. Pursuant to **Eichelman** and **Mione**, Appellees are not entitled to UIM benefits under their Erie policy in the case

*sub judice*. We thus reverse the trial court's order denying Erie's motion for judgment on the pleadings.

Order reversed. Jurisdiction relinquished.

Judge King joins the Memorandum.

Judge McLaughlin Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2021