J-A26043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ELEANORA PETTYJOHN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHESTER DOWNS AND MARINA, LLC, | : | No. 1271 EDA 2021 |
| D/B/A HARRAH'S PHILADELPHIA | : | |
| CASINO AND RACETRACK | : | |

Appeal from the Judgment Entered May 25, 2021
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2019-002508

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED APRIL 19, 2022**

Eleanora Pettyjohn (Pettyjohn) appeals from the judgment entered in the Delaware County Court of Common Pleas after the trial court granted summary judgment in favor of Chester Downs and Marina, LLC, d/b/a Harrah's Philadelphia Casino and Racetrack (Casino), in this personal injury action.  On appeal, Pettyjohn contends the trial court abused its discretion or committed an error of law by:  (1) determining Pettyjohn failed to prove she had a right to relief under Section 343 of the Restatement (Second) of Torts; (2) failing to consider Pettyjohn's right to relief under Section 344 of the Restatement; (3) failing to consider the fact that Casino participated in the spoliation of evidence; (4) failing to state the reasons for its decision on the record or in a written opinion; (5)  failing to examine the entire record before granting summary judgment; and (6) denying Pettyjohn due process of law when it

neglected to rule upon her petition for reconsideration in a timely manner. Because we conclude Pettyjohn proffered sufficient evidence to create a genuine issue of material fact concerning her right to relief under Section 343 of the Restatement, we reverse the order granting summary judgment in favor of Casino, and remand for further proceedings.

The relevant facts and procedural history are as follows. On September 5, 2017, Pettyjohn was a customer at Casino "when she was caused to lose her footing and fall[.]" Pettyjohn's Complaint 3/21/19, at ¶ 5. She avers that the area of carpet where she fell "contained a defective condition." *Id.* In her answers to Casino interrogatories, Pettyjohn explained: "My foot felt like it got caught up in a tear or rip in the carpet[.]" Casino Motion for Summary Judgment, 2/2/21, Exhibit C, Pettyjohn's Answers to Interrogatories, at 2 (unpaginated). *See also id.* at Exhibit D, Deposition of Pettyjohn, 12/19/19 (Pettyjohn Deposition), at 47 (stating she thought "it was a tear in the carpet" that caused her to fall). As a result of the fall, Pettyjohn sustained significant injuries, including a left hip fracture which required surgery. *See* Pettyjohn's Complaint at ¶ 9.

On March 21, 2019, Pettyjohn filed a civil complaint alleging Casino failed to, *inter alia*, maintain the carpet or inspect it for defects, and that Casino's negligence was the cause of her injuries. *See* Pettyjohn's Complaint at ¶¶ 8-9. Casino filed an answer with new matter on April 24, 2019. On December 11, 2020, the court entered an order, scheduling trial for the April 2021 term. *See* Order, 12/11/20, at 1. The order further directed that any

motions for summary judgment be filed no later than 60 days before the trial term.  ***Id.***

On January 26, 2021, Pettyjohn's counsel, Robert G. Mangold, Esquire, took the deposition of Casino's Security and Risk Manager, Lawrence Moore. Pettyjohn's Petition for Reconsideration of this Court's Order Granting Casino's Motion for Summary Judgment, 6/2/21, Exhibit C, Deposition of Lawrence Moore, 1/26/21 (Moore Deposition), at 11.[1]  During the deposition, Attorney Mangold requested additional discovery from Casino including, *inter alia*, "any records involving the replacement of the carpet [i]n the area of the fall."[2] ***Id.*** at 46.

Before providing any additional discovery, Casino filed a motion for summary judgment on February 2, 2021.[3]  Casino argued that Pettyjohn failed to produce sufficient evidence that it breached a duty owed to her.  ***See*** Casino's Memorandum of Law in Support of its Motion for Summary Judgment, 2/2/21, at 8.  Specifically, Casino asserted that Pettyjohn failed to prove the

---

[1] Although selected pages from Moore's deposition were attached to Casino's motion for summary judgment (Exhibit E) and Pettyjohn's answer thereto (Exhibit B), the entire deposition is attached to Pettyjohn's June 2, 2021, Petition for Reconsideration as Exhibit C.

[2] In addition, a "Rider" was attached to the notice of Moore's deposition which requested, among other things, the "[d]ate of carpet installation, repairs and nature of repairs to carpet[.]"  Deposition of Moore, Exhibit 1, Rider to Notice of Deposition.

[3] February 2nd was 58 days before the April 1st trial term.

area of the carpet where she fell was in a dangerous condition, and even if so, that Casino had actual or constructive notice of the danger. *Id.* at 9-11.

On February 16, 2021, Attorney Mangold sent a follow-up letter to Casino's attorney regarding the supplemental discovery requests he made during Moore's deposition. Pettyjohn's Petition for Reconsideration, Exhibit D, Letter from Mangold to Casino's Attorney, 2/16/21. His request included "[a]ny document that is related to the replacement of the casino carpets in the area of [Pettyjohn's] fall." *Id.*

On March 5, 2021, Pettyjohn filed an answer to Casino's motion for summary judgment, asserting she produced sufficient evidence to submit her case to a jury.[4] In support of her claim, Pettyjohn attached an affidavit from witness, Savette Taylor, who averred she was present at Casino at the time of Pettyjohn's fall, and accompanied Pettyjohn to the hospital. Pettyjohn's Answer to Casino's Motion for Summary Judgment, 3/5/21, Exhibit A, Affidavit of Savette Taylor, 3/2/21 (Taylor Affidavit) at 1 (unpaginated). Taylor further attested that, while at the hospital, she

> noticed something protruding out of [Pettyjohn's] left sneaker which looked like a piece of carpet at the casino. When [she]

---

[4] Pursuant to Pennsylvania Rule of Civil Procedure 1035.3, an adverse party has 30 days to file a response to a motion for summary judgment, which, in this case, would have been **March 4**, 2021. *See* Pa.R.C.P. 1035.3(a). The trial court noted in its opinion that although Pettyjohn's response was untimely (by one day), it was "not so much so that the [c]ourt [would] disregard it." Order, 3/24/21, at 1 n.1. *See* Pa.R.C.P. 1035.3, Explanatory Cmt.-1996 (noting the "rule permits entry of judgment for failure to respond to the motion but does not require it").

looked closely, it was stuck between the sole and the main part of the shoe and it was protruding out. It was not on her shoe but locked in between the sole which was partly detached.

*Id.* Taylor stated she took a picture of the shoe. *Id.* She also claimed she returned to the casino, and noticed that the carpet in the area Pettyjohn fell "had pieces . . . that were sticking up" and "looked frayed and torn." *Id.* It merits mention that despite reference to the photograph of Pettyjohn's shoe, no photo was attached to Taylor's affidavit or Pettyjohn's answer.[5]

On May 25, 2021, the trial court entered an order granting Casino's motion for summary judgment and dismissing Pettyjohn's claims with prejudice.[6] *See* Order, 5/25/21, at 9. Although the court found Pettyjohn presented sufficient evidence "that might allow a jury to find that the carpet where [she] fell was torn or ripped (since Pettyjohn so stated both in her deposition and in her Interrogatory Answers) and that such condition could have been dangerous[,]" it, nevertheless, concluded "there [was] no evidence in the record . . . that the torn carpet existed for such a length of time that in the exercise of reasonable care, [Casino] should have known of it[, and t]he lack of evidence that [Casino] ha[d] actual or constructive notice of the alleged condition on [the] premises is fatal to Pettyjohn's claim." *Id.* at 5, 8.

Eight days later, on June 2, 2021, Pettyjohn filed a petition for reconsideration, asserting that Casino provided "material and relevant"

---

[5] The photograph was later attached to Pettyjohn's petition for reconsideration as Exhibit B.

[6] The order was dated May 24, 2021, but not docketed until the next day.

supplemental discovery on March 15, 2021 — which was, notably, after Casino's motion for summary judgment and Pettyjohn's answer had been filed. Pettyjohn's Petition for Reconsideration at 1-2 (unpaginated).  Specifically, Pettyjohn averred "the documents supplied by [Casino] relate to the installation of the subject carpet and defects that were noted involving the carpet needing repairs due to it becoming unglued in many areas in June, 2017, just three months before [Pettyjohn's] injury on September 5, 2017." *Id.* at 2.  She attached to her petition a June 7, 2017, "Requisition" from Casino which requested the carpet installer "Re-glue carpet at various locations where needed." Pettyjohn's Memorandum of Law in Support of Her Petition for Reconsideration of this Court's Order Granting Summary Judgment, 6/2/21, Exhibit F, Requisition issued 6/7/17.

Casino opposed Pettyjohn's petition, arguing that the supplemental discovery was irrelevant to her claims because it related to "a repair to **unglued** sections of the carpet that were completed in June 2017, three months prior to [Pettyjohn's] alleged incident."  Casino's Opposition to Pettyjohn's Petition for Reconsideration, 6/17/21, at ¶ 6.  Casino emphasized that Pettyjohn alleged her injury resulted from carpet that was "torn or frayed."  *Id.* at ¶ 7.  Moreover, it explained the work order document "only proves that [Casino] had actual notice of an alleged defect, completely different from the defect [Pettyjohn] alleges to have caused her injury, took the necessary steps to remediate said defect, and fixed same three months **prior** to [Pettyjohn's] incident."  *Id.*

On June 24, 2021 — 30 days after the trial court granted summary judgment, but before the court ruled on her petition for reconsideration — Pettyjohn filed a notice of appeal. *See* Pa.R.A.P. 903(2) (notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken"). Thereafter, on June 30th, the trial court entered an order denying Appellant's petition for reconsideration as moot because Pettyjohn's "Notice of Appeal . . . divested [the c]ourt of jurisdiction to rule on the Reconsideration Petition[.]" *See* Order, 6/30/21, at 1.[7] We note the trial court did not direct Pettyjohn to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Pettyjohn raises the following claims on appeal, which we have reorganized for purposes of disposition:

I. Whether the Trial Court committed error of law or abuse of discretion when it failed to correctly consider that under the Restatement (Second) of Torts § 343: (a) [Pettyjohn] need not prove notice where the harmful condition is created by the possessor or agent; (b) question of knowledge by Possessor is immaterial where Possessor has duty to inspect; (c) rebuttable presumption of negligence can be inferred; (d) rebuttable presumption shifts the burden of proof; (e) [Casino] failed to show the exercise of due care as [it] did not perform inspections and admitted same of record; (f) jury may find notice where condition frequently recurred, thus obviating additional proof of notice[?]

II. Whether Trial Court committed error of law or abuse of discretion when it failed to correctly consider that under

_____

[7] Pettyjohn also filed a notice of appeal from this order, which this Court quashed *sua sponte* because an order denying a petition for reconsideration is not an appealable order. *See* 1331 EDA 2021, Order, 9/15/21.

> Restatement (Second) of Torts § 344, [Pettyjohn] need not prove notice (actual or constructive)[?]

III. Whether the Trial Court committed an error of law or abuse of discretion when it failed to correctly consider the overwhelming evidence of spoliation by the withholding of evidence by [Casino] of "a carpet that contained a defective condition[?]"

IV. Whether the Trial Court committed error of law or abuse of discretion when it failed to state, in a written opinion or on the record, the reasons for its decision(s)[?]

V. Whether the Trial Court committed error of law or abuse of discretion when it failed to examine the entire record and determine whether the facts there appearing will support a recovery under any theory of law before deciding on the Motion for Summary Judgment and the [Petition] for Reconsideration[?]

VI. Whether there was a breakdown in the court system and error of law or abuse of discretion when the Trial Court failed to correctly construe Pa.R.A.P. 1701 that denied [Pettyjohn] due process, and is a breakdown in the court system that entitles [Pettyjohn] to *nunc pro tunc* review[?]

Pettyjohn's Brief at 2-4.

Our review of an order granting summary judgment is guided by the following:

> When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, **a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt.** An appellate court may reverse the granting of a motion for

summary judgment if there has been an error of law or an abuse of discretion.

***Gallagher v. GEICO Indem. Co.***, 201 A.3d 131, 136–37 (Pa. 2019) (citations and quotation marks omitted; emphases added).

In her first issue, Pettyjohn contends the trial court abused its discretion when it granted Casino's motion for summary judgment based on the lack of evidence that Casino had actual or constructive notice of the alleged carpet defect.[8]  ***See*** Pettyjohn's Brief at 24.  She insists that a plaintiff is not required to prove notice when the possessor of land creates the harmful condition.  ***See id.*** at 27-28.  Because the record contains "ample evidence" that Casino "intentionally failed [its] duty to inspect the carpet for defective conditions[,]" Pettyjohn contends Casino "created the harmful transitory condition."  ***Id.*** at 28 (footnote omitted).

Further, Pettyjohn asserts that a jury could presume the accident occurred as a result of Casino's negligence when "as here, the cause of the injury is under the management of [Casino] and the accident is such that if does not happen in the ordinary course of things if [Casino] use[d] proper care."  Pettyjohn's Brief at 29.  She also maintains Casino admitted its employees do not inspect the carpet or keep inspection records, but that they "previously witnessed 'ripped carpeting at the casino' and 'torn . . . carpeting . . . that had a piece of duct tape over it[.]"  ***Id.*** at 31 (record citations

---

[8] As noted ***supra***, the trial court found there was sufficient evidence for a jury to conclude "the carpet where Pettyjohn fell was torn or ripped . . . and that such condition could have been dangerous."  Order, 5/25/21, at 5.

omitted). Accordingly, Pettyjohn asserts: "Where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it." *Id.* at 32 (emphasis omitted). Thus, she insists the record contained sufficient evidence to demonstrate a genuine issue of material fact "regarding the Restatement (Second) of Torts § 343 standard[.]" *Id.* at 33.

There is no dispute that Pettyjohn was a business invitee of Casino at the time of her fall. *See Walker v. Drexel Univ.*, 971 A.2d 521, 524 n.1 (2009) ("A business invitee is a person who is invited to enter or remain on the land of another for a purpose directly or indirectly connected with business dealings with the possessor of the land.") (citation omitted). "The duty of care owed to a business invitee (or business visitor) is the **highest duty** owed to any entrant upon land." *Gutteridge v. A.P. Green Servs., Inc.*, 804 A.2d 643, 656 (Pa. Super. 2002) (citation omitted and emphasis added). It requires a possessor of land to protect the invitee from known dangers, as well as "those which might be discovered with reasonable care. *Id.* (citation omitted). As outlined in Section 343 of the Restatement (Second) of Torts:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

- 10 -

> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343. **See also Gillingham v. Consol Energy, Inc.**, 51 A.3d 841, 850 (Pa. Super. 2012). The Comment to Section 343 further explains:

> [A]n invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. **He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation.** He is entitled to expect such care not only in the original construction of the premises, and any activities of the possessor or his employees which may affect their condition, but **also in inspection to discover their actual condition and any latent defects,** followed by such repair, safeguards, or warning as may be reasonably necessary for his protection under the circumstances.
>
> . . . To the invitee the possessor owes not only this duty, but also the additional duty to **exercise reasonable affirmative care to see that the premises are safe for the reception of the visitor, or at least to ascertain the condition of the land,** and to give such warning that the visitor may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.

Restatement (Second) of Torts § 343, cmt. b. (emphases added).

Nevertheless, this Court has explained that a business owner "is not an insurer of the safety of its customers" and

> the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence.

**Myers v. Penn Traffic Co.**, 606 A.2d 926, 928 (Pa. Super. 1992) (*en banc*) (citation omitted).

- 11 -

Here, based upon the record before it, the trial court found Pettyjohn failed to present sufficient evidence that Casino knew or should have known there was a defect in the carpet where Pettyjohn fell. *See* Order, 5/25/21, at 8. The court emphasized that, rather than address Casino's lack of notice argument, Pettyjohn focused on Casino's admitted failure to conduct "reasonable inspections." *Id.* at 7 (citation omitted). The trial court opined:

> . . . Pettyjohn's framing of the inquiry, . . . sidesteps the factors that inform whether [Casino] had notice — evidence that the condition existed for such a length of time that in the exercise of reasonable care, the owner should have known of it. . . .
>
> \*     \*     \*
>
> [T]here is no evidence in the record before this Court that the torn carpet existed for such a length of time that in the exercise of reasonable care, [Casino] should have known of it. Put differently, the record evidence — including Pettyjohn's own testimony that she was not aware of how long the alleged tear in the carpet existed before she fell, and that she does not know whether [Casino] knew about the alleged tear — would leave a fact finder to "merely guess" the amount of time the alleged tear in the carpet existed before the incident. The lack of evidence that [Casino] had actual or constructive notice of the alleged condition on [the] premises is fatal to Pettyjohn's claim. In light of all record evidence, submitted by both Pettyjohn and [Casino], the Court concludes that reasonable minds could not differ as to whether [Casino] had the requisite notice that would otherwise — but not here — suffice to trigger [Casino's] liability for Pettyjohn's injuries.

*Id.* at 7-9.

Upon our review, we conclude the trial court erred when it granted summary judgment in favor of Casino. We acknowledge that, at the time the court considered the motion for summary judgment, the only evidence before it concerning Casino's notice, or lack thereof, of the defective carpet was: (1)

Pettyjohn's testimony that she did not look down at the ground before she fell; (2) Taylor's statement that she noticed a "piece of the carpet" in Pettyjohn's shoe while at the hospital; (3) Taylor's statement that, after the incident, she went back to the casino and noticed that, in the area where Pettyjohn fell, "the carpet had pieces of it that were sticking up" that "looked frayed and torn[,]" and "looked like they had been there for a long time[;]" and (4) Casino's acknowledgment that its security officers do not inspect the carpet for defects, but instead, report any hazards they notice as they roam the floor. **See** Pettyjohn's Deposition at 47; Moore's Deposition at 33-34; Taylor Affidavit at 1. Construing these facts in the light most favorable to the non-moving party, in accordance with our standard of review, we conclude Pettyjohn proffered sufficient evidence to raise a genuine issue of material fact as to whether Casino had **constructive notice** of the defect before her fall. **See** Restatement (Second) of Torts § 343; **Gallagher**, 201 A.3d at 136–37.

This Court has previously explained:

> What constitutes **constructive notice** must depend on the circumstances of each case, but one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident. The **relative durability of the defect** comprises a related factor. For example, in **Rogers**[ **v. Horn & Hardart Barking Co.,** 127 A.2d 762, 764 (Pa. Super. 1956),] we held that spilt soup on the floor was too transitory a condition to charge the defendant with notice. Much differently, in **Hartigan**[ **v. Clark**, 165 A.2d 647, 652 (Pa. 1960),] our Supreme Court held that a store patron who tripped on a raised metal strip on a stair could charge the proprietor with notice because of the durability of the condition, if a witness saw the defect immediately thereafter.

In sum, to charge a defendant store with constructive notice of a harmful condition a plaintiff need not produce positive testimony as to how long the defect existed if: (1) **the defect is of a type with an inherently sustained duration**, as opposed to a transitory spill which could have occurred an instant before the accident; and (2) **a witness saw the defect immediately before or after the accident**.

***Neve v. Insalaco's***, 771 A.2d 786, 791 (Pa. Super. 2001) (some citations omitted and emphases added).

Here, the evidence produced by Pettyjohn, if credited by the fact finder, would support a conclusion that the defect in the carpet was not a transitory condition (such as spilt liquid), but rather one with an "inherently sustained duration," and one that a witness (Taylor) saw "immediately . . . after the accident." ***Neve***, 771 A.2d at 791. Indeed, in her affidavit, Taylor attested that she returned to the Casino after the accident and observed — in the area where Pettyjohn fell — "the carpet had pieces of it that were sticking up . . . and it looked like they had been there for a long time." Taylor Affidavit at 1.

Moreover, the deposition testimony of Casino's Security and Risk Manager Lawrence Moore and Security Shift Supervisor Michael Zanghi, both of which were before the trial court, reveals that Casino had no system in place to affirmatively inspect the casino floor and discover latent defects. ***See*** Moore's Deposition, at 33-35 (explaining that Casino does not "inspect" for hazards, but that security officers have responsibility to report any hazards they notice while "roaming their zone");[9] Casino's Motion for Summary

---

[9] This portion of Moore's deposition was attached to Pettyjohn's answer to Casino's summary judgment motion as Exhibit B.

Judgment, 2/2/21, Exhibit F, Deposition of Michael Zanghi, 1/27/21, at 14 (acknowledging he did not "perform inspections of the casino area regardless of whether a fall has already occurred or as a proactive measure").[10] Accordingly, we conclude the trial court erred when it failed to review the evidence in the light most favorable to Pettyjohn (the non-moving party) and resolve all doubts as to the existence of a genuine issue of material fact in her favor. **See Gallagher**, 201 A.3d at 136–37. Indeed, our review of the record reveals a genuine issue of material fact concerning Casino's constructive notice of the carpeting defect.[11] Thus, we reverse the order granting summary judgment and remand for further proceedings.

Due to our disposition of Pettyjohn's first issue, we need only briefly address her remaining claims. In her second claim, Pettyjohn argues the trial

---

[10] Pettyjohn also argues Casino was on notice of the carpet defects because Moore acknowledged in his deposition that he "previously witnessed 'ripped carpeting at the casino' and 'torn . . . carpeting . . . that had a piece of duct tape over it[.]" Pettyjohn's Brief at 31, *citing* Moore's Deposition at 38-40. However, that portion of Moore's deposition was not before the court at the time it ruled on the summary judgment motion. Rather, it was attached to Pettyjohn's petition for reconsideration, filed **after** the court entered its ruling. Thus, we do not consider it in our analysis.

[11] To the extent that Pettyjohn invokes the doctrine of doctrine of *res ipsa loquiter* in her brief, **see** Pettyjohn's Brief at 29-30, we note that she presented no evidence that her fall was the sort that would not occur absent Casino's negligence. **See Quinby v. Plumsteadville Fam. Prac., Inc.**, 907 A.2d 1061, 1071 (Pa. 2006) (doctrine of *res ipsa loquiter* permits "a plaintiff [to] satisfy [her] burden of producing evidence of a defendant's negligence by proving that [s]he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence").

court abused its discretion when it failed to consider her right to relief under Section 344 of the Restatement (Second) of Torts. *See* Pettyjohn's Brief at 33-36. However, she never raised the applicability of Section 344 before the trial court in any of her pleadings. Thus, this argument is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Nonetheless, we note that Section 344 subjects a possessor of land to liability for "physical harms caused by the accidental, negligent, or intentionally harmful acts of third persons or animals[.]" Restatement (Second) of Torts § 344. Pettyjohn presented no evidence that the defect in the carpet was caused by the acts of "third persons or animals." *Id.* Accordingly, Section 344 is simply inapplicable under the facts of this case.

Next, Pettyjohn argues the trial court abused its discretion or erred as a matter of law when it failed to consider "the overwhelming evidence" that Casino participated in the spoliation of evidence. Pettyjohn's Brief at 17. She insists Casino's belated disclosure of the June 2017 "Requisition" order — which requested that certain areas of the carpet be reglued — equated to the spoliation of evidence that the carpet contained a defective condition. *See id.* at 19-20.

Pettyjohn's contention is simply incorrect. "'Spoliation of evidence' is the **non-preservation or significant alteration** of evidence for pending or future litigation." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011) (emphasis added and footnote omitted).

> The doctrine applies where relevant evidence has been lost or destroyed. Where a party destroys or loses proof that is pertinent to a lawsuit, a court may impose a variety of sanctions, among them entry of judgment against the offending party, exclusion of evidence, monetary penalties such as fines and attorney fees, and adverse inference instructions to the jury.

***Marshall v. Brown's IA, LLC***, 213 A.3d 263, 268 (Pa. Super. 2019) (citations and quotation marks omitted).

Here, Pettyjohn does not assert that Casino destroyed or altered relevant evidence. Rather, she complains Casino failed to disclose potentially relevant evidence in a timely manner — more appropriately labeled a discovery violation. Pettyjohn did not request the trial court impose a discovery sanction, which is a matter reserved for the discretion of the trial court. ***See Anthony Biddle Contractors, Inc. v. Preet Allied American Street, LP***, 28 A.3d 916, 926 (Pa. Super. 2011). Moreover, upon remand, Pettyjohn now has this evidence to present to the trial court in support of her claims. Thus, her spoilation argument fails.

Appellant's final three claims all relate to her petition for reconsideration, which the court did not consider before she filed a notice of appeal. She argues: (1) the trial court failed to address the supplemental arguments raised in her reconsideration petition; (2) the court abused its discretion "by failing to examine the entire record" — *i.e.*, her petition for reconsideration — to determine whether the facts "support a recovery under any theory of law[;']]" and (3) the trial court's failure to consider her petition for reconsideration before the time for filing a notice of appeal expired "constitute[s] a denial of due process, and breakdown in the court system."

Pettyjohn's Brief at 36, 40, 44. We conclude that these claims are now moot. Upon remand, Pettyjohn may submit the additional evidence presented in her motion for reconsideration to the trial court. Furthermore, we note: "An order denying reconsideration is unreviewable on appeal[, and] a trial court may . . . properly refuse to consider new evidence presented for the first time in a motion for reconsideration." ***Bollard & Assocs., Inc. v. H & R Indus., Inc.***, 161 A.3d 254, 256 (Pa. Super. 2017).

Accordingly, because we conclude the trial court erred when it granted summary judgment in favor of Casino, we reverse the order on appeal, and remand for further proceedings.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Stabile did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2022